## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

ERICK LITTLE
21251 Owlsnest Circle
Germantown, MD 20876

LAWRENCE WHITTED
1819 P Street SE, Apt. C-11
Washington, DC 20020

TIMOTHY McCLOUGH
5023 Kimi Gray Court, SE
Washington, DC 20019

GERALD TUCKER
17340 Rocky Mountain Lane
Dumfries, VA 22026

LEROY QUARLES
2610 Fort Drive
Suitland, MD 20746

FITZGERALD STONEY
4716 Alabama Avenue, SE
Washington, DC 20019

MARCELLO VIRGIL
2405 18th Street, SE
Washington, DC 20020

LEON McKENZIE
1193 46th Place, SE
Washington, DC 20019

and

LOUIA McKENZIE
4528 Buchanan Street
Hyattsville, MD 20781

on behalf of themselves and all others
similarly situated,

     *Plaintiffs*,

     v.

Case No.: _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY
600 5th Street, NW
Washington, DC 20001

DIAMOND TRANSPORTATION
7307C Highland Street
Springfield, VA 22315

EXECUTIVE PERSONNEL SERVICES,
INC.
1200 G Street, NW
Washington, DC 20005

 and

FIRST TRANSIT, INC.
600 Vine Street
Suite 1400
Cincinnati, OH 45202

 *Defendants.*

This is a civil rights action in which Plaintiffs Erick Little, Lawrence Whitted, Timothy McClough, Gerald Tucker, Leroy Quarles, Fitzgerald Stoney, Leon McKenzie, Louia McKenzie, and Marcello Virgil (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, seek to remedy the violation of their rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Fair Credit Reporting Act, 15 U.S.C. § 1681; and the District of Columbia Human Rights Act, D.C. Code § 12-1401 *et seq.*, against the Washington Metropolitan Area Transit Authority ("WMATA") and WMATA's contractors Diamond Transportation ("Diamond"), Executive Personnel Services, Inc. ("EPSI"), and First Transit, Inc. ("First Transit") (collectively, "Defendants") and allege, upon personal knowledge as to themselves and upon information and belief with respect to other matters, as follows:

## PRELIMINARY STATEMENT

1.     This class action lawsuit calls on WMATA and its contractors to adopt a fair and nondiscriminatory background screening policy.  While criminal background information can be a legitimate tool for employers when screening job applicants, WMATA's background check policy is overly broad, unjustifiably rigid and unduly harsh.  It results in the unnecessary firing of current employees who have a demonstrated track record of successful employment and the denial of employment to applicants who are well-qualified to perform the jobs at issue safely and effectively.  The policy disqualifies many job applicants and employees based on criminal history that is not related to the job at issue or occurred so long ago—in some cases, 20 or 30 years in the past—that it is irrelevant to any fair determination of employee honesty, reliability, or safety.  For example, under WMATA's policy, a person who has *ever* had a felony conviction for drug possession is *permanently* disqualified from employment in a wide range of jobs, including bus operator and custodian, even if the applicant has been drug-free and held a steady job for ten or 20 years.

2.     WMATA's policy leads to grossly unfair results for many qualified, hard-working applicants and employees, including, for example, Plaintiffs:

- Erick Little, a 47-year-old man who worked as a bus driver for Montgomery County's Ride-On Transportation Service ("Ride-On"), had his job offer as a bus operator for WMATA withdrawn based on a conviction for simple drug possession that was more than 25 years old and stemmed from an incident when he was just 19 years old;

- Lawrence Whitted, a 58-year-old man, was fired from his job as a MetroAccess driver for a WMATA contractor, even though he had performed the job

3

successfully for more than five years, based on a drug-related conviction from

1989, which he had disclosed when he initially applied for the job; and

- Marcello Virgil, a 45-year-old man, was fired from his job as a custodian with a

    WMATA contractor and denied an equivalent position with WMATA (which

    came with better pay and benefits) based on a drug-related conviction that was 15

    years old, even though he disclosed the conviction before he started work for the

    contractor, and his supervisors had encouraged him to apply for the position at

    WMATA.

The above are just a few examples of qualified individuals who have been barred from

employment under WMATA's policy.  Excluding these qualified individuals is unwarranted and

unfair.

       3.     WMATA's policy is far more restrictive than necessary to protect public safety.

The federal Transportation Security Administration, which hires individuals to screen passengers

at airport checkpoints, uses background screening standards that are less onerous than

WMATA's.  Moreover, several of WMATA's member jurisdictions, including the District of

Columbia, have more flexible background screening policies than WMATA does.  And other

transit authorities, such as the Chicago Transit Authority, have policies that affirmatively seek to

hire individuals with criminal records.

       4.     WMATA's policy is not only overly harsh, it also has a discriminatory effect on

qualified African-American workers.  The number of Americans who have a criminal record has

increased dramatically in recent decades.  Historically and at present, African-Americans have

been hardest hit by this national trend because of racial profiling and other discriminatory

policies and practices in our criminal justice system.  For this reason, African-Americans in the

Washington, D.C. metropolitan area are more likely to have criminal convictions than members of other racial groups.  Racial disparities in rates of arrests and convictions are not explained by disproportionate rates of criminal activity.  A recent study revealed that, while rates of drug use in Washington, D.C. are roughly equal across all races, African Americans are arrested for drug offenses far more often than individuals of other races.  Accordingly, WMATA's use of criminal background checks unfairly and disproportionately limits opportunity for qualified African-American employees and applicants in violation of federal and local antidiscrimination laws. This lawsuit seeks equal opportunity for all who have been wrongly fired or denied employment because of WMATA's overbroad and unnecessarily punitive background screening policy.

## FACTUAL BACKGROUND

5.      WMATA was created in 1967 by an interstate compact between the District of Columbia, the State of Maryland, and the Commonwealth of Virginia to develop and operate a regional transportation system.  Through its network of Metrorail, Motorbus, and MetroAccess systems, it serves a population of approximately five million people in the District of Columbia; the Maryland counties of Montgomery and Prince Georges; the Virginia counties of Arlington, Fairfax, and Loudoun; and the Virginia cities of Alexandria, Fairfax, and Falls Church. WMATA operates the second-largest heavy rail transit system, the sixth-largest bus network, and the fifth-largest paratransit service in the United States.  WMATA serves a diverse population: of its bus passengers, 59% are African American, 19% white, 10% Latino, 4% Asian, 2% multi-racial, and 1% Native American.

6.      WMATA is a major employer in the greater Washington, D.C. metropolitan area. WMATA employs directly or through third-party contractors over 12,000 workers who drive and operate buses and trains; maintain and repair buses and trains; perform janitorial services at its

facilities and administrative offices; perform landscaping services at its facilities and administrative offices; perform track, equipment, and electrical repair; and perform training services.  Positions at WMATA can provide a middle-class income and offer valuable training and promotional opportunities, including for workers without formal higher education.

7.     For more than 30 years, WMATA hired and promoted qualified employees, including some employees who had prior criminal convictions.  For example, WMATA employed qualified formerly incarcerated individuals to assist them in re-entering society successfully through its contract with EPSI.  Prior to 2009, WMATA disqualified job applicants from positions having direct contact with the public only if they had two felony convictions within three years, or three felony convictions within ten years for any crime against person, property, or society.  *See* Metro News Release, "Metro implements stricter hiring standards" (attached as Exhibit A).  Misdemeanor convictions were considered on a case-by-case basis, with consideration given to the nature of the offense, the time lapse since the offense, and efforts at rehabilitation.

8.     On August 19, 2009, WMATA announced a stricter policy ("2009 Policy") that disqualified a much broader class of job applicants.  *See* WMATA Pre-Employment Background Check Standards (attached as Exhibit B).  WMATA's 2009 Policy disqualified, among others: (i) all applicants, "except positions having direct contact with the public," who had a single felony conviction of any kind or two misdemeanor convictions for drug possession or a crime against person, property, or society within the last five years, (ii) all applicants for "positions having direct contact with the public" who had a single felony conviction of any kind or two misdemeanor convictions for drug possession or a crime against person, property, or society

within the last ten years, and (iii) all applicants who had a conviction for a "crime of violence," regardless of the time lapse since the offense.

9.     On December 22, 2011, WMATA expanded the policy to exclude an even broader class of workers.

10.     Specifically, on that date, WMATA promulgated a revised policy ("2011 Policy" or "WMATA's Criminal Background Check Policy") that applies to job applicants and to certain existing employees, including those who are under consideration for new positions with access to the general public or employees who have been on a non-work status, such as on medical leave, for 90 days or longer.  *See* WMATA Policy 7.2.3 Background Screenings (attached as Exhibit C).

11.     WMATA's 2011 Policy disqualifies from employment individuals with a far broader set of criminal convictions than the 2009 Policy.  Specifically:

(a)     The policy ***permanently disqualifies*** from employment ***in any position*** (regardless of whether the position requires interaction with the public) all individuals with a felony conviction for the sale or distribution of a controlled substance, no matter how long ago that conviction occurred;

(b)     The policy ***permanently disqualifies*** from employment ***in any position*** (regardless of whether the position requires interaction with the public) all individuals with any type of conviction (misdemeanor or felony) for possession of a weapon during the commission of a crime, no matter how long ago that conviction occurred;

(c)     The policy ***permanently disqualifies*** from employment ***in any public-facing position, including bus operators and janitors***, all individuals with a felony conviction involving any violence no matter how long ago that conviction occurred;

(d)      The policy **_disqualifies_** from employment **_in any position_** all individuals with a single misdemeanor conviction in the last five years or felony conviction in the last ten years for property crimes, including vandalism, receiving stolen goods, theft, burglary, or larceny.[1]

12.      Existing employees of WMATA can be terminated as a result of a criminal background screening—even if they disclosed their criminal history when they applied to work for WMATA and they have had no new criminal convictions during their employment—if they seek a new position within WMATA or if they take leave from work for 90 days or longer.

13.      On its face, WMATA's Criminal Background Check Policy gives no consideration to individual circumstances, such as the specific conduct that led to the offense; whether the conviction resulted in probation, drug treatment, or community service; efforts at rehabilitation; or whether the conviction has been expunged.

14.      WMATA's Criminal Background Check Policy does not distinguish between positions with widely divergent job functions or responsibilities.  For example, the 2011 Policy uses the same list of disqualifying offenses for applicants for jobs ranging from station manager to bus operator to custodian.

15.      WMATA requires its contractors, including Diamond, EPSI, and First Transit, to utilize the 2011 Policy in hiring, promoting, and terminating employees.  At least 79 individuals have been disqualified pursuant to WMATA's Criminal Background Check Policy from jobs with WMATA contractors.

16.      WMATA's Criminal Background Check Policy is not only unfair and unnecessary, it also disproportionately excludes qualified African-American job applicants and

---

[1] The policy permanently disqualifies from employment in fiduciary positions individuals with a felony conviction for a property crime.

employees because the arrest and conviction rates in the Washington, D.C. metropolitan area are disproportionately higher for African Americans than for individuals of other races.

**PARTIES**

**I.**      **Plaintiffs**

17.      Plaintiffs are individuals (i) against whom Defendants took an adverse employment action, (ii) who were deterred from applying for job openings, or (iii) who were deterred from taking medical or personal leave as a result of WMATA's Criminal Background Check Policy, as implemented by WMATA and/or its contractors, including Diamond, EPSI, and First Transit:

    a.   Plaintiff ERICK LITTLE is an African-American resident of Germantown, Maryland.

    b.   Plaintiff LAWRENCE WHITTED is an African-American resident of Washington, D.C.

    c.   Plaintiff TIMOTHY McCLOUGH is an African-American resident of Washington, D.C.

    d.   Plaintiff GERALD TUCKER is an African-American resident of Dumfries, Virginia.

    e.   Plaintiff LEROY QUARLES is an African-American resident of Suitland, Maryland.

    f.   Plaintiff FITZGERALD STONEY is an African-American resident of Washington, D.C.

    g.   Plaintiff LEON McKENZIE is an African-American resident of Washington, D.C.

      h.   Plaintiff LOUIA McKENZIE is an African-American resident of Hyattsville, Maryland.

      i.   Plaintiff MARCELLO VIRGIL is an African-American resident of Washington, D.C.

**II.**    <u>**Defendants**</u>

18.    Defendant WMATA is a governmental body created by an interstate compact creating a tri-jurisdictional operation in the District of Columbia, the State of Maryland, and the Commonwealth of Virginia.

19.    At all relevant times, WMATA has continuously been doing business in the District of Columbia and the Washington, D.C. metropolitan area.

20.    Defendant DIAMOND is a transportation company headquartered in Northern Virginia.  At all relevant times, Diamond has been a contractor for WMATA's MetroAccess service, and, in such capacity, conducted business throughout the Washington, D.C. metropolitan area.

21.    At all relevant times, Diamond has continuously done business in the District of Columbia and the Washington, D.C. metropolitan area.

22.    Defendant EPSI is a company headquartered in Washington, D.C.  EPSI is a staffing firm with a contract under a General Services Administration pilot program for federal agencies, and hires contract laborers for many entities, including WMATA.  At all relevant times, EPSI operated under a subcontract with WMATA to provide janitorial and landscaping employees for WMATA administrative office buildings.  Prior to the 2011 Policy, EPSI actively recruited individuals with criminal convictions to fill WMATA's staffing needs.

23.     At all relevant times, EPSI has continuously done business in the District of Columbia and the Washington, D.C. metropolitan area.

24.     Defendant FIRST TRANSIT is a transportation company headquartered in Cincinnati, Ohio.  At all relevant times, First Transit has been a contractor for WMATA's MetroAccess service, and, in such capacity, conducted business throughout the Washington, D.C. metropolitan area.

25.     At all relevant times, First Transit has continuously done business in the District of Columbia and the Washington, D.C. metropolitan area.

## JURISDICTION AND VENUE

26.     The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 as this claim arose under the Constitution, laws, or treaties of the United States, and under § 717 of Title VII, 42 U.S.C. § 2000e-16(c).  This court also has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

27.     Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), because Defendants' unlawful employment practices were committed in Washington, D.C., and Plaintiffs were terminated from jobs that took place, or would have been based, in Washington, D.C. Additionally, venue is proper pursuant to 42 U.S.C. § 1391(e)(3) because Plaintiffs Lawrence Whitted, Timothy McClough, Fitzgerald Stoney, and Marcello Virgil reside within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

28.     On September 6, 2012, a member of the proposed class filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against WMATA based on the revocation of a contingent offer of his employment with WMATA.  That

11

class member explicitly challenged the criminal background check policy used by WMATA because it has a disparate impact on African Americans as a class in violation of Title VII of the Civil Rights Act of 1964.

29.     On November 5, 2013, Plaintiff Little filed a timely charge of discrimination with the EEOC against WMATA based on the rescission of a contingent employment offer.  Mr. Little explicitly challenged the criminal background check policy employed by WMATA because it has a disparate impact on African Americans as a class in violation of Title VII of the Civil Rights Act of 1964.  On July 15, 2014, Mr. Little requested a Notice of Right to Sue.  The Attorney General is now required to issue a Notice of Right to Sue.  42 U.S.C. § 2000e-5(f)(1).

30.     On July 26, 2013, Plaintiff Whitted filed a Questionnaire with the EEOC based on the termination of his employment with Diamond.  Mr. Whitted explicitly challenged the criminal background check policy employed by WMATA and Diamond because it has a disparate impact on African Americans as a class in violation of Title VII of the Civil Rights Act of 1964.  On October 28, 2013, Mr. Whitted filed a timely Charge of Discrimination with the EEOC.  Mr. Whitted alleged that the criminal background check policy employed by WMATA and Diamond was racially discriminatory because it has a disparate impact on African Americans as a class in violation of Title VII of the Civil Rights Act of 1964.  On July 15, 2015, Mr. Whitted requested a Notice of Right to Sue.  The Attorney General and EEOC now are required to issue a Notice of Right to Sue.  42 U.S.C. § 2000e-5(f)(1).

31.     On January 4 and March 4, 2013, Plaintiff McClough timely filed a Charge of Discrimination with the EEOC against WMATA and EPSI based on the termination of his employment with EPSI.  Mr. McClough explicitly challenged the criminal background check policy employed by WMATA and EPSI as constituting racial discrimination against him, and

African Americans as a class, in violation of Title VII and other applicable laws.  On July 15,

2015, Mr. McClough requested a Notice of Right to Sue.  The Attorney General and EEOC now

are required to issue a Notice of Right to Sue.  42 U.S.C. § 2000e-5(f)(1).

32.     On September 13, 2013, Plaintiff Louia McKenzie timely filed a Charge of

Discrimination with the EEOC against WMATA and First Transit based on the denial of his

employment with First Transit.  Mr. McKenzie explicitly challenged the criminal background

check policy employed by WMATA and First Transit as constituting racial discrimination

against him, and African Americans and Latinos as a class, in violation of Title VII and other

applicable laws.  On July 15, 2015, Mr. McKenzie requested a Notice of Right to Sue.  The

Attorney General and EEOC now are required to issue a Notice of Right to Sue.  42 U.S.C. §

2000e-5(f)(1).

33.     In addition, Defendants have been on notice from the EEOC and other terminated

employees and applicants for over a year of the class-wide discriminatory impact of WMATA's

Criminal Background Check Policy.

34.     The other Plaintiffs timely filed Charges of Discrimination with the EEOC, and

requested Notices of Right to Sue on July 15, 2015.  The Attorney General and EEOC now are

required to issue each Plaintiff a Notice of Right to Sue.  42 U.S.C. § 2000e-5(f)(1).

35.     All other prerequisites to the filing of this suit have been fulfilled.

## CLASS DEFINITION

36.     Plaintiffs bring this case as a class action under Federal Rules of Civil Procedure

23(a), 23(b)(2), and 23(b)(3) on behalf of the following classes:

*WMATA Class*:  All African-American persons who, since February 23, 2012, have been
fired, deterred from applying for internal job openings, deterred from taking medical or
personal leave, and/or denied employment with WMATA as a result of WMATA's
Criminal Background Check Policy.

13

*Contractor Classes*:  All African-American persons who:

> *Diamond Subclass*—since July 26, 2012 have been fired, deterred from applying for internal job openings, deterred from taking medical or personal leave, and/or denied employment with Diamond as a result of WMATA's Criminal Background Check policy.

> *EPSI Subclass*—since March 4, 2012 have been fired, deterred from applying for internal job openings, deterred from taking medical or personal leave, and/or denied employment with EPSI as a result of WMATA's Criminal Background Check policy.

> *First Transit Subclass*—since September 13, 2012 have been fired, deterred from applying for internal job openings, deterred from taking medical or personal leave, and/or denied employment with First Transit as a result of WMATA's Criminal Background Check policy.

## CLASS ACTION ALLEGATIONS

37.    Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23(b)(2) and (3) for violations of, *inter alia*, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*; the Fair Credit Reporting Act, 15 U.S.C. § 1681; and the District of Columbia Human Rights Act of 1977, D.C. Code § 2-1402.01.  The WMATA Class and Contractor Classes (collectively the "Classes") consist of all terminated employees, employees deterred from applying for internal job openings, employees deterred from taking medical or personal leave, and applicants denied employment based on WMATA's Criminal Background Check Policy.

38.    WMATA's Criminal Background Check Policy has harmed all members of the Classes.  Plaintiffs estimate that members of the Classes are so numerous that joinder of all members is impracticable.

39.    Defendants' relationship with the members of the Classes and Defendants' application of WMATA's Criminal Background Check Policy with respect to members of the

Classes has been substantially uniform.  Questions of law and fact will predominately be common to the Classes.

40.     Defendants have acted in a manner generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

41.     WMATA has adopted a single, uniform policy that is used for all employees and applicants to WMATA and its contractors.

42.     There are questions of law and fact common to the Classes, and these questions predominate over any questions affecting only individual members.  Common questions include, but are not limited to:

(a)     Whether Defendants' application of WMATA's Criminal Background Check Policy violates Title VII;

(b)     Whether Defendants' application of WMATA's Criminal Background Check Policy violates the District of Columbia Human Rights Act;

(c)     Whether Defendants maintain a single, uniformly applied criminal background check policy;

(d)     Whether Defendants' application of WMATA's Criminal Background Check Policy deters or excludes applicants, or causes employees to be terminated based on a past criminal conviction, who are otherwise eligible for employment;

(e)     Whether Defendants' application of WMATA's Criminal Background Check Policy to deter or exclude applicants, or terminate employees based on a past criminal conviction, has a disparate impact on African-American applicants and/or employees;

(f)     Whether Defendants' application of WMATA's Criminal Background Check

Policy to deter or exclude applicants, or terminate employees based on a past

criminal conviction, is job-related and consistent with business necessity;

(g)     Whether less discriminatory policies exist that would meet Defendants' legitimate

business needs, if any; and

(h)     What equitable and injunctive relief for the Classes is warranted.

43.     Plaintiffs' claims are typical of the claims of the Classes:  (1) each of the

Plaintiffs either was terminated from employment or denied employment by Defendants;

(2) each received or would have received a criminal background screening pursuant to

WMATA's Criminal Background Check Policy; (3) each was terminated from employment,

deterred from seeking employment, deterred from taking medical or personal leave, or denied

employment based on a criminal conviction; and (4) each has the same discrimination claim

based on disparate impact.  All of these claims are shared by each and every Class member.

44.     Plaintiffs fairly and adequately represent and protect the interest of the members

of the Classes.  Plaintiffs have no conflict with one another or Class members.  Plaintiffs are

committed to the goal of having WMATA revise its hiring policy and practice to reduce or

eliminate its discriminatory impact on African-American applicants and employees.

45.     Plaintiffs have retained counsel competent and experienced in complex class

action employment discrimination litigation.

46.     This action is superior to any other method for the fair and efficient adjudication

of this legal dispute.  Defendants have acted and/or refused to act on grounds generally

applicable to the Classes, making appropriate declaratory and injunctive relief with respect to

Plaintiffs and the Classes as a whole.  The Class members are entitled to injunctive relief to end

Defendants' common, uniform, unfair, and discriminatory policy and practice.

## STATEMENT OF THE CLAIM

### I.    Claims of the Plaintiffs

#### A.    Erick Little

47.    Plaintiff Erick Little is a 47-year-old African-American man whose job offer to

work as a WMATA bus operator was unfairly revoked based on a 27-year-old drug-related

conviction, despite his successful employment as a bus driver for Montgomery County's Ride-

On.

48.    In July 2013, Mr. Little received a contingent offer of employment for a position

as a Bus Operator with WMATA after passing the requisite tests and physical examination.  The

offer was rescinded three weeks later due to the results of his criminal background check.

49.    In 1987, Mr. Little was convicted of possession of a controlled and dangerous

substance.  Mr. Little was 19-years-old at the time of this offense.  Mr. Little served six months

in a work-release center and 12 months of probation.  Mr. Little was also convicted of three

misdemeanors in 1996, 2003, and 2006, respectively.  Each of these convictions resulted in one

year of probation.

50.    Mr. Little disclosed his criminal history, including his 1987 conviction, to a

WMATA employee during his interview, and was told, "I don't think they should hold this

against you since it was 27 years ago."  Following Mr. Little's disclosure, WMATA extended a

conditional offer.  Notwithstanding the interviewer's admission, WMATA subsequently

rescinded the offer.

51.     After Mr. Little's offer was rescinded and he was informed of WMATA's Criminal Background Check Policy, he was deterred from applying for further employment at WMATA given his criminal history.

52.     Mr. Little is well-qualified to work for WMATA.  At the time he applied for the Bus Operator position, Mr. Little was employed as a Bus Operator for Montgomery County's Ride-On, a job in which he followed bus routes that are routinely used by WMATA bus drivers. Mr. Little has also worked as a commercial driver for various companies and municipal government agencies in the Washington, D.C. metropolitan area.  Currently, Mr. Little is employed as a truck driver by Montgomery County's Department of Liquor Control.

**B.     Lawrence Whitted**

53.     Plaintiff Lawrence Whitted is a 58-year-old African-American man who was unfairly fired from his job at Diamond as a WMATA MetroAccess driver/operator based on a 24-year-old drug-related conviction, despite his successful work at MetroAccess for over five years prior to his firing.

54.     Mr. Whitted was convicted of distribution of a controlled substance in 1989, 18 years before he was employed by Diamond and WMATA, for which he was sentenced to three years in an inpatient drug treatment program.

55.     Mr. Whitted declined to pursue direct employment with WMATA or a different WMATA contractor because of the high likelihood he would be disqualified from employment under WMATA's Criminal Background Check Policy.

56.     Mr. Whitted is well-qualified to work for Diamond and WMATA.  Mr. Whitted worked for Diamond for over five years.  Mr. Whitted has also worked as a commercial driver for other companies in the Washington, D.C. metropolitan area.

### C.      Timothy McClough

57.      Plaintiff Timothy McClough is a 57-year-old African-American man who was unfairly fired from his job at EPSI as a WMATA landscaper based on a 22-year-old drug-related conviction, despite his successful work as a landscaper and custodian for WMATA for over six years prior to his firing.

58.      Mr. McClough was convicted of a drug-related felony in 1990, for which he served three and one-half years in federal prison and completed a drug rehabilitation program.  In 2006, he was convicted of misdemeanor possession and received a sentence of 40 hours of community service and drug rehabilitation.

59.      Mr. McClough is well-qualified to work for EPSI and WMATA and had been employed by these entities since 2006.

### D.      Gerald Tucker

60.      Plaintiff Gerald Tucker is a 35-year-old African-American man who was unfairly fired by WMATA from his job as a train operator based on a nine-year-old misdemeanor weapons charge (for which Mr. Tucker was sentenced to probation), despite his successful work as a WMATA bus and train operator for over five years prior to his firing.

61.       On January 25, 2013, Mr. Tucker, who is a single father, was terminated because he had accrued a number of unexcused absences to care for his young son.  Initially, in May 2013, Mr. Tucker was notified by his union, Amalgamated Transit Union Local 689 ("Local 689"), that he would be reinstated.  On June 12, 2013, however, Mr. Tucker was notified that he would not be rehired due to his criminal record.

62.     Mr. Tucker's criminal history consists of only one misdemeanor in 2004, for which he pled guilty to brandishing a firearm.  Mr. Tucker was sentenced to two years of probation, which he successfully completed.

63.     On October 9, 2013, Mr. Tucker was informed by the union representative that he would be reinstated without back pay.  Mr. Tucker was not provided a basis for his reinstatement and was given no assurances that his criminal background would not again be used in the future as a basis for disqualifying him from employment.  As a result, Mr. Tucker is deterred from taking personal or medical leave and is deterred from applying for a new position within WMATA for fear that his criminal background will again result in termination of his employment.

**E.     Leroy Quarles**

64.     Plaintiff Leroy Quarles is a 53-year-old African-American man who was unfairly fired from his job at Diamond as a WMATA MetroAccess driver/operator based on a 25-year-old conviction for assault and robbery (for which Mr. Quarles was sentenced to probation), despite his successful work at MetroAccess for over three years prior to his firing.

65.     Mr. Quarles, in conformance with WMATA's Criminal Background Check Policy, underwent a background check in May 2013.  Near the end of May 2013, Diamond and WMATA were notified that Mr. Quarles had a disqualifying criminal conviction.

66.     Mr. Quarles was convicted in 1988 of assault and attempted robbery, and sentenced to two years probation.  Mr. Quarles successfully completed his sentence and probation.

67.     Mr. Quarles continued to work as a WMATA MetroAccess driver/operator while Diamond appealed application of WMATA's Criminal Background Check Policy on

Mr. Quarles's behalf.  On July 2, 2013, Mr. Quarles was removed from service as a result of WMATA's policy.  On July 16, 2013, Mr. Quarles was fired.

68.     Mr. Quarles is well-qualified to work for Diamond and WMATA.  Prior to being terminated, Mr. Quarles had worked for Diamond as a WMATA MetroAccess bus driver/operator for three years.

### F.     Fitzgerald Stoney

69.     Plaintiff Fitzgerald Stoney is a 62-year-old African-American man with more than 40 years of experience as a laborer, including numerous jobs laying rails for WMATA.  He was unfairly denied a job as a mechanic technician at WMATA based on convictions that are decades old.

70.     In January 2012, Mr. Stoney applied online for the mechanic technician position and, on February 25, 2012, at WMATA's invitation, he sat for a three-part written assessment test.

71.     Mr. Stoney did not receive a response from WMATA until April 2012.  On April 13, 2012, WMATA sent Mr. Stoney a letter stating that it was denying his employment application due to the results of his criminal background check.  Mr. Stoney never received any other explanation or communication from WMATA about his application.

72.     Mr. Stoney's criminal history is decades old and unrelated to the position of mechanic technician.  In 1983, Mr. Stoney was convicted of armed robbery and was incarcerated until 1988.  In 1994, he was convicted of misdemeanor simple assault, for which he did not serve any jail or prison time.

73.     Mr. Stoney is well-qualified for the position of mechanic technician.  He has been performing work similar to that required of a mechanic technician since 1971, when he joined

Laborers Local 456 (now Laborers Local 657).  Through the union, Mr. Stoney received training for tasks including drilling and laying railroad tracks.  He has since worked on a variety of contracts, including contracts that involved laying rails for WMATA, for more than 40 years.

### G.   Leon McKenzie

74.     Mr. Leon McKenzie is a 52-year-old African-American man who was automatically disqualified for a job as a bus driver at WMATA based on a drug-related conviction from 1995, despite his long history of successful employment.

75.     Early in 2013, Mr. Leon McKenzie applied online for a position as a bus operator at WMATA.  WMATA invited him to sit for a three-part skills assessment test, which he passed. He then participated in a full-day job interview.

76.     At the conclusion of the interview, in March 2013, Mr. Leon McKenzie received a contingent offer of employment as a bus operator.

77.     On June 14, 2013, WMATA sent Mr. Leon McKenzie a letter stating that it intended to withdraw his job offer based on the results of his criminal background check.  He received a second letter dated June 28, 2013, formally rescinding the offer.

78.     After he received the letters, Mr. Leon McKenzie contacted the company that conducted the background check, First Choice Background Screening, and learned that he had been automatically disqualified based on a 19-year-old felony conviction.  He requested, and was refused, a copy of the criminal background report that was the basis for his disqualification.

79.     Mr. Leon McKenzie believes that the basis of his disqualification was his 1995 conviction for attempted possession with intent to distribute a controlled substance.

80.     Mr. Leon McKenzie is well-qualified for the position of bus operator.  He possesses a learner's permit for a commercial driver's license and has maintained steady

employment for over a decade as a staff accountant, construction worker, and skilled laborer.  He also maintains a small roster of private accounting clients and volunteers as a tax preparer at his church during tax season.

**H.     Louia McKenzie**

81.     Plaintiff Louia McKenzie is a 47-year-old African-American man who was unfairly denied a position as a MetroAccess operator at First Transit—despite nearly four years of recent experience doing the exact same job at a different WMATA contractor—based on convictions more than 20 years old.

82.     Mr. Louia McKenzie applied to First Transit after his former employer, MV Transportation, lost its contract with WMATA.  First Transit responded to his application by asking him to report for a training program.  He completed the training program and was scheduled to begin work on June 17, 2013.

83.     On June 14, 2013, Mr. Louia McKenzie received a phone call from First Choice Background Screening informing him that his criminal background check would prevent him from beginning work as scheduled.

84.     At no point prior to, or after, the retraction of his job offer did Mr. Louia McKenzie receive a copy of the report that First Transit used as the basis for its adverse action, a description in writing of his rights under the Fair Credit Reporting Act, or an opportunity to dispute the accuracy of the information contained in the report.

85.     In 1991, Mr. Louia McKenzie was convicted of assault and robbery and was incarcerated until 2007.  He successfully completed five years on parole from 2007 to 2012.  He has had no other convictions since his release in 2007.

86.     Mr. Louia McKenzie is well-qualified for the position of MetroAccess operator, having worked in the position for nearly four years leading up to his application to First Transit. From 2009 to 2013, he worked as a MetroAccess operator for MV Transportation, a former WMATA contractor.  Before being hired by MV Transportation in 2009, Mr. Louia McKenzie disclosed his criminal history and was informed that it was not relevant because his convictions were more than ten years old at that time.

### I.     Marcello Virgil

87.     Plaintiff Marcello Virgil is a 45-year-old African-American man who was unfairly fired from his job as a custodian with a WMATA contractor based on a drug-related conviction that was 15 years old, even though he disclosed the conviction before he started work. Mr. Virgil was also wrongly denied a custodian job at WMATA, which involved the same work for better pay and benefits, based on the same conviction, notwithstanding that his supervisor had suggested he apply.

88.     Mr. Virgil was employed by EPSI as a WMATA seasonal landscaper from July to September 2011.  In April 2012, he was rehired by EPSI as a WMATA seasonal landscaper and required to submit to a criminal background check.  Mr. Virgil disclosed his prior conviction, agreed to the screen, and was cleared to begin work.  In November 2012, Mr. Virgil was offered a year-round position at EPSI performing custodial services for WMATA.

89.     In March 2013, Mr. Virgil completed an authorization form to allow EPSI to conduct another criminal background check so that it could renew his WMATA-issued identification card.  Less than a week later, on March 21, 2013, Mr. Virgil was terminated due to his criminal background report—which included only the old conviction that he had already disclosed.

90.     Prior to the termination of his employment, Mr. Virgil did not receive a copy of the report that EPSI used to terminate his employment, a description in writing of his rights under the Fair Credit Reporting Act, or an opportunity to dispute the accuracy of the information contained in the report.

91.     Also in March 2013, Mr. Virgil applied for a full-time position as a custodian directly at WMATA.  The custodian position involved the same work responsibilities that Mr. Virgil was already handling as an EPSI employee, but offered better pay and benefits.  WMATA contacted Mr. Virgil and indicated that he would be scheduled for an interview in April 2013 contingent on the results of his criminal background check.

92.     WMATA never scheduled Mr. Virgil for an interview.  To Mr. Virgil's knowledge, WMATA disqualified him from employment as a custodian based on his criminal background check.

93.     Mr. Virgil was convicted of a drug-related felony in 1998, for which he was incarcerated for 22 months.

94.     Mr. Virgil is well-qualified for the position of custodian at EPSI and WMATA; he was employed as a custodian at EPSI from 2012 to 2013 and would have performed substantially the same tasks at WMATA.  Additionally, Mr. Virgil's supervisor at WMATA had encouraged him to apply to WMATA based on his successful performance at EPSI, and his former supervisors at WMATA submitted a letter of recommendation on his behalf.

## II.     WMATA's Criminal Background Check Policy Is Unlawful and Racially Discriminatory

### A.     WMATA's Criminal Background Check Policy Is Not Job-Related or Consistent with Business Necessity

95.     WMATA's Criminal Background Check Policy is overly broad and unnecessarily restrictive because it excludes workers on the basis of convictions that are irrelevant to any fair

determination of employee honesty, reliability, or safety in that WMATA's Criminal Background Check Policy:

(a)     **Excludes workers on the basis of convictions that occurred in the distant past.**  WMATA's Criminal Background Check Policy permanently disqualifies employees and job applicants with certain types of criminal convictions, such as distribution of a controlled substance, even if the worker has been drug-free and held a steady job for decades.  For other types of convictions, WMATA's Criminal Background Check Policy disqualifies employees and job applicants with convictions within the last five or ten years—arbitrary cutoff dates that are not based on scientific or other evidence of whether the conviction is likely to predict worker wrongdoing.  Although WMATA contends that its policy is necessary to combat employee fraud and wrongdoing, WMATA does not track—and has never tracked—how many instances of fraud, waste, abuse, criminal wrongdoing, accidents, or injuries have been caused by employees with a criminal record or whether such instances of misconduct are more or less frequently caused by employees with a criminal record as compared to other employees; and

(b)     **Excludes workers on the basis of convictions that are not sufficiently related to the duties of particular positions.**  WMATA's Criminal Background Check Policy categorizes all positions at WMATA and its contractors as (1) positions involving access to the general public, (2) positions involving fiduciary duties, or (3) other positions.  These categories are overly broad and insufficiently tailored to the actual job responsibilities expected of WMATA employees in particular positions.  For example, positions involving "access to the general public" include bus operator, custodian, station manager, cleaner/shifter, and revenue collector.  WMATA's Criminal Background Check Policy fails to distinguish between

convictions that could be linked to specific risks associated with each of these positions and convictions that are wholly unrelated to the job at issue.

96.     Nor does WMATA's Criminal Background Check Policy provide for an individualized assessment to determine that the particular employee or job applicant's criminal conviction is job-related, such that disqualifying the particular worker would be consistent with business necessity.

### B.     WMATA's Criminal Background Check Policy Has a Discriminatory Effect on African Americans

97.     WMATA's Criminal Background Check Policy has a discriminatory effect on employment at Defendants WMATA, Diamond, EPSI, and First Transit.

98.     The number of Americans who have an arrest or conviction record has multiplied in recent decades, leading to an increase in the number of job applicants and workers who may be disqualified by criminal background checks.  An estimated 12 to 14 million Americans of working age are formerly incarcerated or have a felony conviction.[2]

99.     African Americans have been disproportionately affected by these national trends because of racial disparities in the criminal justice system.  Recent statistics from the FBI show that African Americans accounted for more than 3 million arrests in 2009 (28.3% of total arrests), even though they represented only 12.9% of the general population.[3]  One study found

---

[2] John Schmitt & Kris Warner, *Ex-offenders and the Labor Market* 2 (Ctr. for Econ. Policy & Research, Nov. 2010).

[3] Crime in the United States, 2009 U.S. Department of Justice—Federal Bureau of Investigation (Sept. 2010) tbl. 43, http://www2.fbi.gov/ucr/cius2009/arrests/index.html.

that in 2005, African Americans represented 14% of current drug users but constituted 33.9% of persons arrested for drug offenses.[4]

100.    WMATA's employees and job applicants come from the Washington, D.C. metropolitan area, including the District of Columbia and neighboring counties and cities in Maryland and Virginia.

101.    In the Washington, D.C. metropolitan area, a disproportionate number of persons arrested, convicted, and incarcerated are African American, compared to the demographics of the population.  According to information published by the D.C. Sentencing and Criminal Code Revision Commission ("Commission"), historically, on an annual basis, over 90% of the persons convicted of a crime in Washington, D.C. have been African American, despite constituting roughly 60% of the total population in the 1990s and 2000s.  For example, between 1993 and 1998, 95% of the individuals convicted were African American.  Of the 17,332 individuals convicted and sentenced during the 1993 to 1998 period, 15,331 were African American, 624 were white, and 193 were other races.[5]  Similarly, between 1996 and June 2002, African Americans represented 94.1% of criminal convictions.

102.    The data published by the Commission indicates that these historical trends of disproportionate convictions of African Americans continue to this day.  From 2009 to 2012, over 90% of the persons convicted of crimes in the District of Columbia were African American, despite African Americans constituting roughly 50% of the total population in 2010:

---

[4] Marc Mauer, Justice for All? *Challenging Racial Disparities in the Criminal Justice System*, Am. Bar Ass'n (2010).

[5] Information about race was missing from 1,193 cases.

| Year | Percentage |
|------|------------|
| 2009 | 96.2% |
| 2010 | 96.6% |
| 2011 | 95.3% |
| 2012 | 92.4% |

103.    African Americans in the Washington, D.C. metropolitan area are incarcerated at rates significantly higher than whites.  According to U.S. Census data, in each of the jurisdictions served by WMATA, a disproportionate number of persons detained in local jails in 2010 were African American compared to the demographics of the population:

| Jurisdiction | Percentage Black (Population) | Percentage Black (Detained) |
|--------------|-------------------------------|------------------------------|
| Washington, D.C. | 50.7% | 87.4% |
| Montgomery Cnty., Md. | 17.2% | 54.8% |
| Prince George's Cnty., Md. | 64.5% | 79.05% |
| Arlington Cnty., Va. | 8.5% | 57.17% |
| Fairfax Cnty., Va. | 9.2% | 38.11% |
| City of Alexandria, Va. | 21.8% | 52.75% |

104.    Based on data from the Bureau of Justice Statistics, African Americans are incarcerated at 19 times the rate of whites in the District of Columbia.  African Americans also experience disproportionate rates of incarceration in Maryland and Virginia (5.5 and 5.9 times

the rate of whites, respectively).[6]  Stated differently, African Americans are overrepresented in prisons and jails.  African Americans represent 68% of Maryland's incarcerated population but only 29% of the state's total population.  Similarly, African Americans constitute 58% of incarcerated individuals but only 19% of the total population in Virginia.[7]

105.    By barring individuals with certain types of convictions from employment, WMATA's Criminal Background Check Policy has had a disparate impact on African-American workers by precluding them from obtaining or retaining their employment with WMATA and its contractors, or by deterring them from seeking advancement opportunities or taking medical or personal leave.  Simply stated, more African Americans are precluded from obtaining employment or have otherwise experienced adverse employment action from WMATA's Criminal Background Check Policy more frequently than individuals of other races.

**C.     Less Restrictive Alternatives Are Available to Achieve WMATA's Legitimate Business Needs**

106.    There are a variety of less discriminatory alternatives that Defendants could adopt that would be fair and nondiscriminatory without compromising public safety.

107.    Less discriminatory alternatives include removing or limiting significantly the use of permanent disqualification based on certain criminal convictions; modifying the cutoff dates for certain criminal convictions based on available scientific or other evidence of whether the conviction is likely to predict future worker wrongdoing; limiting disqualification based on prior criminal convictions to convictions that are sufficiently related to the particular job at issue; and

---

[6] Marc Mauer & Ryan S. King, *Uneven Justice:  State Rates of Incarceration by Race and Ethnicity* 11 (Sentencing Project, July 2007).

[7] Prison Policy Initiative, 50 State Incarceration Profiles.

providing employees and applicants the opportunity to rebut presumptive disqualification by explaining why their criminal history is no longer relevant.

108.    Flexible background screening policies are workable.  WMATA previously utilized a more flexible background screening policy, and, despite its assertions that inflexible disqualifiers are necessary to combat worker fraud and wrongdoing, there is no data regarding employee misconduct that could support WMATA's adoption of more restrictive policies in 2009 and 2011.

109.    Several other local regional transportation organizations, including Arlington Transit, Annapolis Transit, Veolia Transportation, and Ride-On, utilize comparatively flexible background screening policies.  Plaintiffs include individuals who work or have worked for Ride-On in Montgomery County, MD, which does not permanently disqualify individuals from employment based on prior criminal convictions.

110.    The American Public Transportation Association recommends that transit authorities adopt the federal standard, developed for the Transportation Security Administration, which include narrower bases for disqualification than WMATA's Criminal Background Check Policy.  Likewise, the District of Columbia does not permanently disqualify individuals from employment based on prior criminal convictions except in limited circumstances, such as convictions involving violent sex crimes.

111.    Defendants have not adopted any of the less discriminatory alternatives described above despite knowledge of the adverse and unjust impact that WMATA's Criminal Background Check Policy has had, and continues to have, on workers.

112.    At a September 12, 2013, meeting of the WMATA Board of Directors, a number of employees who had been terminated from, or denied reinstatement to, positions at WMATA

because of criminal convictions that predated their employment with WMATA gathered to express their frustration about WMATA's Criminal Background Check Policy to the Board of Directors.  Following the meeting, those employees—together with current members of WMATA's workforce, members of WMATA's largest union, and other concerned community members—protested outside of WMATA headquarters to express their belief that WMATA's 2011 Policy is unfair and discriminatory.[8]  WMATA declined to revise its policy to address the concerns raised at the September 12, 2013 meeting and protest.

113.    On January 7, 2014, Councilmember Muriel Bowser introduced Proposed Resolution 20-619, "Sense of the Council on the Need for the Washington Metropolitan Area Transit Authority to Update its Personnel Policies to Encourage the Employment of Returning Citizens Resolution of 2014," which calls on WMATA to adopt a fair and nondiscriminatory background screening policy and to take affirmative steps to hire job applicants with prior criminal convictions.  On February 19, 2014, the Committee on Economic Development held a public roundtable at which several workers, union members, and other concerned community members testified, and many others attended, to support the adoption of Proposed Resolution 20-619.  On April 29, 2014, the Committee on Economic Development issued a Committee Report recommending approval of Proposed Resolution 20-619 by the full Council.  WMATA declined to revise its policy to address the concerns raised by Proposed Resolution 20-619, the public roundtable, and the committee report.

114.    In April 2012, the EEOC issued enforcement guidance on employers' consideration of arrest and conviction records when making employment decisions ("EEOC

_____

[8] *See* Dana Hedgpeth, *Metro union workers protest*, Washington Post (Sept. 12, 2013).

Guidance" or "Guidance").[9]  In the Guidance, the EEOC discussed how employers' use of

criminal history information can, in some instances, violate Title VII of the Civil Rights Act,

explaining that policies that are facially race-neutral can result in disparate impact liability under

Title VII if they disproportionately impact racial minorities (or other protected groups) and are

not job-related and consistent with business necessity.

115.    The EEOC Guidance encourages employers who choose to rely on criminal

background checks to consider three factors in order to ensure that their use of the checks is job-

related and consistent with business necessity:  (1) the nature and seriousness of the offense,

(2) the amount of time that has passed since the offense, and (3) whether the offense has any

relationship to the job at issue.  The Guidance also recommends that employers give job

applicants the opportunity to explain why they are qualified despite the past criminal offense.

116.    Alternatively, the EEOC recommends that employers validate their criminal

records policies under the Uniform Guidelines on Employee Selection Procedures.

117.    Upon information and belief, WMATA has declined to revise its Criminal

Background Check Policy in light of the EEOC Guidance.

---

[9] Equal Employment Opportunity Comm'n, *Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964,* as amended*, 42 U.S.C. §§ 2000e *et seq.* (April 25, 2012).  The EEOC previously issued guidance on these matters in 1987 and 1990.  *See* Equal Employment Opportunity Comm'n, *Policy Statement on the Issue of Conviction Records under Title VII of the Civil Rights Act of 1964* (Feb. 4, 1987); Equal Employment Opportunity Comm'n, *Policy Statement on the Use of Statistics in Charges Involving the Exclusion of Individuals with Conviction Records from Employment* (July 29, 1987); Equal Employment Opportunity Comm'n, *Policy Guidance on the Consideration of Arrest Records in Employment Decisions under Title VII of the Civil Rights Act of 1964* (Sept. 7, 1990).

**D.      WMATA's Criminal Background Check Policy Produces Absurd and Grossly Unfair Results**

118.    As a result of WMATA's Criminal Background Check Policy, employees of WMATA and its contractors have been terminated, or had job offers rescinded, from positions that they have performed—often for many years—without issue, including:

- The rescission of a job offer as a bus operator to Mr. Little (who was employed as a bus driver by Ride-On in Montgomery County at the time) based on a 27-year-old conviction for drug possession committed when he was 19-years-old and for which he served six months in a work-release center and 12 months of probation;

- The firing of Mr. Tucker as a train operator based on a nine-year-old misdemeanor conviction, for which he was sentenced to probation;

- The firing of Mr. Quarles as a MetroAccess driver based on a 25-year-old conviction, for which he was sentenced to probation;

- The firing of Mr. Whitted as a MetroAccess driver because of a 24-year-old conviction for which he was sentenced to treatment in an inpatient drug rehabilitation facility;

- The firing of Mr. McClough as a building custodian because of a 23-year-old conviction and a seven-year-old misdemeanor drug possession conviction for which he was sentenced to drug treatment and community service;

- The rescission of a job offer as a mechanic technician to Mr. Stoney (who has 40 years of relevant work experience) based on a 30-year-old felony and a 19-year-old misdemeanor, even though he has worked successfully since 1994 as a laborer, including laying rails for WMATA;

- The firing of Mr. Virgil as a custodian based on a 15-year-old drug conviction;

34

- The rescission of a job offer as a MetroAccess driver to Mr. Louia McKenzie (who had previously worked as a MetroAccess driver for approximately four years) based on a 23-year-old conviction; and

- The rescission of a job offer as a bus operator to Mr. Leon McKenzie based on a 19-year-old drug conviction, despite his having worked successfully for more than ten years as a staff accountant, construction worker, and skilled laborer.

119.    As a result of WMATA's Criminal Background Check Policy, WMATA employees are deterred from taking medical leave for fear that they will be denied the opportunity to return to work in positions where they have performed—often for many years— without issue.  For example, Mr. Tucker has been deterred from taking medical and/or personal leave.

120.    As a result of WMATA's Policy, WMATA employees are deterred from applying for internal job postings at WMATA, and qualified applicants are deterred from applying for employment at WMATA and/or its contractors.  For example, Mr. Little, Mr. Whitted, and Mr. Leon McKenzie have been deterred from applying for positions for which they are qualified at WMATA and/or its contractors.

<u>**CLAIMS FOR RELIEF**</u>

**Count I: Violations of Title VII of the Civil Rights Act of 1964,**
**42 U.S.C. §§ 2000e** *et seq.*
**(All Plaintiffs against All Defendants)**

121.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

122.    Plaintiffs bring this claim on their own behalf and on behalf of the Classes.

123.    Defendants' policy and practice of using a criminal background screening policy that excludes from employment persons with irrelevant and dated conviction records has harmed,

and continues to harm, Plaintiffs and the Classes, and constitutes unlawful discrimination on the basis of race in violation of 42 U.S.C. §§ 2000e *et seq*.

124.     Defendants' policy and practice of using a criminal background screening policy that excludes from employment persons with irrelevant and dated conviction records has a disparate impact on African Americans, and is neither job-related nor consistent with business necessity.  Even if Defendants' policy and practice of denying and/or terminating employment based on a criminal conviction could be justified as a business necessity, which it cannot, less discriminatory alternatives exist that would serve any legitimate purpose.

125.     Plaintiffs and the Classes have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  Plaintiffs and the Classes are now suffering, and will continue to suffer, irreparable injury from Defendants' discriminatory acts and omissions.

126.     Defendants' conduct has caused, and continues to cause, Plaintiffs and the Classes substantial losses in earnings and other employment benefits.

**Count II: Violations of D.C. Human Rights Act, D.C. Code §§ 2-1401 *et seq*.**
**(Plaintiffs Quarles and Whitted against Diamond;**
**Plaintiffs McClough and Virgil against EPSI;**
**Plaintiff Louia McKenzie against First Transit)**

127.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

128.     Plaintiffs bring this claim on their own behalf and on behalf of the Classes.

129.     Defendants' policy and practice of using a criminal background screening policy that excludes from employment persons with irrelevant and dated conviction records has harmed, and continues to harm, Plaintiffs and the Classes, and constitutes unlawful discrimination on the basis of race in violation of D.C. Code §§ 2-1401 *et seq*.

130.    Defendants' policy and practice of using a criminal background screening policy that excludes from employment persons with irrelevant and dated conviction records has a disparate impact on African Americans, and is neither job-related nor consistent with business necessity.  Even if Defendants' policy and practice of denying and/or terminating employment based on criminal convictions could be justified by business necessity, which it cannot, less discriminatory alternatives exist that would serve any legitimate purpose.

131.    Plaintiffs and the Classes have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  Plaintiffs and the Classes they seek to represent are now suffering, and will continue to suffer, irreparable injury from Defendants' discriminatory acts and omissions.

132.    Defendants' conduct has caused, and continues to cause, Plaintiffs and the members of the Classes substantial losses in earnings and other employment benefits.

**Count III: Declaratory Judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, for violation Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000e *et seq*., that WMATA's Criminal Background
Check Policy Is Unlawful
(All Plaintiffs against All Defendants)**

133.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

134.    Plaintiffs bring this claim on their own behalf and on behalf of the Classes.

135.    Defendants' conduct as herein alleged violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, which makes unlawful discrimination against employees on the basis of race.

136.    Defendants discriminated against Plaintiffs and the Classes in violation of Title VII when they fired them and/or denied them employment.

137.    As a proximate result of Defendants' discriminatory actions, Plaintiffs and the Classes have suffered losses in compensation and earning capacity.  As a result of those actions and consequent harm, Plaintiffs and the Classes have suffered such damages in an amount to be proved at trial.

138.    There is a real and actual controversy between Plaintiffs and Defendants regarding whether Defendants' application of WMATA's Criminal Records Policy is an ongoing violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* that is preventing Plaintiffs from obtaining employment at WMATA.

139.    As a result, Plaintiffs are entitled to a declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

**Count IV: Declaratory Judgment under the Declaratory Judgment Act,
28 U.S.C. §§ 2201-2202 for violation of the D.C. Human Rights Act, D.C. Code
§ 2-1401 *et seq.*, that WMATA's Criminal Background Check Policy Is Unlawful
(Plaintiffs Quarles and Whitted against Diamond;
Plaintiffs McClough and Virgil against EPSI;
Plaintiff Louia McKenzie against First Transit)**

140.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

141.    Plaintiffs bring this claim on their own behalf and on behalf of the Classes.

142.    Defendants' conduct as herein alleged violated the D.C. Human Rights Act, D.C. Code §§ 2-1401 *et seq.*, which makes unlawful discrimination against employees on the basis of race.

143.    Defendants discriminated against Plaintiffs and the Classes in violation of the D.C. Human Rights Act when they fired them and/or denied them employment.

144.    As a proximate result of Defendants' discriminatory actions, Plaintiffs and the Classes have suffered losses in compensation and earning capacity.  As a result of those actions

and consequent harm, Plaintiffs and the Classes have suffered such damages in an amount to be proved at trial.

145.    There is a real and actual controversy between Plaintiffs and Defendants regarding whether Defendants' application of WMATA's Criminal Records Policy is an ongoing violation of the D.C. Human Rights Act, D.C. Code §§ 2-1401 *et seq.*, that is preventing Plaintiffs from obtaining employment at WMATA.

146.    As a result, Plaintiffs are entitled to a declaratory judgment that the practices complained of herein are unlawful and violate the D.C. Human Rights Act, D.C. Code § 2-1401 *et seq.*

### Count V: Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681
### (Plaintiff Virgil Against EPSI;
### Plaintiff Louia McKenzie against First Transit)

147.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

148.    Plaintiffs bring this claim on their own behalf.

149.    Defendants EPSI and First Transit willfully took adverse action against Plaintiffs Virgil and Louia McKenzie, without providing prior notice in writing containing (1) a copy of the consumer report that formed the stated basis of the adverse action, (2) a description of rights under the Fair Credit Reporting Act, and (3) an opportunity to dispute the accuracy of the information contained in the consumer report.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs and the Classes pray for relief as follows:

150.    Certification of the case as a class action on behalf of the proposed Classes;

151.     Designation of Representative Plaintiffs Erick Little, Gerald Tucker, Leroy Quarles, Lawrence Whitted, Timothy McClough, Fitzgerald Stoney, Marcello Virgil, Leon McKenzie, and Louia McKenzie as representatives of the WMATA Class;

152.     Designation of Leroy Quarles, Lawrence Whitted, Timothy McClough, Marcello Virgil, and Louia McKenzie as representatives of the Contractor Classes;

153.     Designation of Representative Plaintiffs' counsel as Class Counsel;

154.     A declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.; the Fair Credit Reporting Act, 15 U.S.C. § 1681; and the D.C. Human Rights Act of 1977, D.C. Code §§ 2-1402.01 *et seq*.;

155.     A permanent injunction against Defendants, and all officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in the unlawful policies, practices, customs, and usages set forth herein;

156.     An order that Defendants institute and carry out policies, practices, and programs that provide equal employment opportunities for Plaintiffs and Class members who would be eligible for employment under the EEOC Guidance and that Defendants eradicate the effects of past and present unlawful employment practices;

157.     An order restoring Plaintiffs and Class members to their rightful positions as employees, and requiring that applicants be given priority consideration for hire in job vacancies in the positions for which they are qualified;

158.     An order for back pay and benefits lost by Plaintiffs and the Classes;

159.     An order for compensatory damages for emotional distress suffered by Plaintiffs and the Classes;

160.    An order for front pay for Plaintiffs and the Classes;

161.    An order for statutory, actual, and punitive damages for Plaintiffs Virgil and Louia McKenzie against Defendants EPSI and First Transit, respectively;

162.    Costs incurred, including reasonable attorneys' fees to the extent allowable by law, including but not limited to 42 U.S.C. §§ 2000e-5(k) and 2000e-16 and 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

163.    Pre-judgment and post-judgment interest, as provided by law; and

164.    Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

### JURY DEMAND

165.    Plaintiffs hereby demand a trial by jury on all issues raised in their complaint.


Dated:  Washington, D.C.
        July 30, 2014


                            Respectfully submitted,


                            By: _____

**Arnold & Porter LLP**
John A. Freedman (DC Bar No. 453075)
Brandie N. Weddle (application pending, DC
Bar No. 982859)
Narda Pelham (DC Bar No. 1004368)
555 Twelfth Street, NW
Washington, D.C. 20004
202-942-5316
John.Freedman@aporter.com

**NAACP Legal Defense &**
   **Educational Fund, Inc.**
Sherrilyn Ifill*
Christina A. Swarns*
ReNika C. Moore*
Ria Tabacco Mar*
40 Rector Street, 5th Floor
New York, NY 10006

*application for admission pro hac vice
  forthcoming*

**Washington Lawyers' Committee for Civil
Rights and Urban Affairs**
Mathew Handley (DC Bar No. 489946)
Dennis Corkery (DC Bar No. 1016991)
11 Dupont Circle, NW
Suite 400
Washington, D.C. 20036

**NAACP Legal Defense &**
   **Educational Fund, Inc.**
Johnathan J. Smith*
1444 I Street, NW, 10th Floor
Washington, D.C. 20005

*Attorneys for Plaintiffs and the Putative Class*