IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
ERICK LITTLE, *et al.*,                                  )
)
       Plaintiffs,                                      )
)
v.                                                              ) Civil Action No.: 1:14-cv-01289-RMC
)
)
WASHINGTON METROPOLITAN AREA    )
TRANSIT AUTHORITY, *et al.*,                  )
)
       Defendants.                                    )
_____ )

**PLAINTIFFS' OPPOSITION TO DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S MOTION TO QUASH PLAINTIFFS' SUBPOENAS OR IN THE ALTERNATIVE FOR A PROTECTIVE ORDER**

In an effort to obtain documents relevant to the phase one discovery topics set forth in the Court's Scheduling Order, Plaintiffs have served or attempted to serve subpoenas on eight contractors of Defendant Washington Metropolitan Area Transit Authority ("WMATA") that were required to apply the WMATA 2011 Criminal Background Check Policy that is challenged in this case. *See* Scheduling Order ¶ 2, Apr. 23, 2015, ECF No. 78. Each of the subpoenaed contractors is believed to possess information relevant to issues upon which the Court has permitted discovery. To date, none of these contractors has raised any objections to these subpoenas. Only one party, Gymco, has even questioned the subpoenas, and that inquiry pertained only to whether or not Gymco possessed the relevant information. Plaintiffs and Gymco quickly resolved that issue without any need for the Court's involvement.

Despite the contractors' failure to object, WMATA, in an apparent effort to obstruct Plaintiffs' discovery efforts, has asked the Court to quash Plaintiffs' subpoenas in their entirety. Def.'s Mot. to Quash, June 3, 2015, ECF No. 80. But because, as WMATA correctly

recognizes, "a party does not have standing to seek to quash a subpoena to a non-party," Def.'s Mem. of P. & A. 19, the Court should deny WMATA's motion. WMATA's only articulated "interest" in the subpoenaed documents is the fact that the information sought by Plaintiffs is relevant to the WMATA Policy that is at the heart of this litigation. That interest alone, which could be raised by virtually any litigant in response to any subpoena, is insufficient to confer standing and thus does not allow WMATA to challenge the subpoenas. Because WMATA lacks standing to challenge Plaintiffs' subpoenas, it also lacks standing to complain about the scope of Plaintiffs' requests.

The Court should also deny WMATA's alternative request for a protective order. As an initial matter, several of WMATA's concerns were mooted by Plaintiffs' filing of an Amended Complaint. And in any event, each of the requests in the subpoenas is reasonably calculated to seek evidence that is relevant to the categories of discovery prescribed by the Court and therefore does not warrant a protective order. WMATA's contentions otherwise are meritless.

Ultimately, to the extent that the subpoenaed contractors have concerns about Plaintiffs' requests, such concerns should be discussed by the contractors and Plaintiffs during the meet-and-confer process to determine if a solution can be reached without the Court's involvement.[1]

Thus, WMATA unnecessarily and prematurely seeks to involve the Court in a discovery matter over which there is currently no dispute, and in which WMATA has no interest. Its motion should be denied.

---

[1] Counsel for Plaintiffs met and conferred with Counsel for WMATA and explained that we are willing to directly engage with the subpoenaed contractors to address any questions or concerns they may have about the scope of the subpoenas.

**Argument**

Pursuant to Federal Rule of Civil Procedure 45, Plaintiffs issued document subpoenas to eight entities believed to be WMATA contractors or subcontractors that are required to utilize WMATA's 2011 Criminal Background Check Policy when making decisions about employees for WMATA contracts.[2] The subpoenas are limited in scope and tailored to obtain information that is central to the class certification and disparate impact issues for which the Court has authorized discovery. *See* Scheduling Order ¶ 2. The subpoenas seek, among other things, copies of WMATA's 2011 Policy and any other WMATA criminal background check policy that the subpoenaed contractors were required to follow or implement, information about the racial composition of prospective employees that were submitted to WMATA, and information about the racial composition of employees who have been terminated or otherwise suffered adverse employment action pursuant to WMATA's 2011 Policy. *See, e.g.*, Ex. 1, Attach. A at 10-13 (Document Requests 1 and 6). These requests are relevant to identifying absent class members; understanding the application (or not) of WMATA's 2011 Policy to WMATA's contractors; and determining the demographics of the applicant pool and the employees subject to and adversely impacted by the Policy, which, as the Court has noted, is information likely to

---

[2] The eight substantially identical subpoenas were issued to MV Transportation, Inc.; BPT Manufacturing Corp.; Dynamic Concepts, Inc.; G.W. Peoples Contracting Co., Inc.; Gymco; ServiceMax; Veolia Transportation; and Transdev Services, Inc. *See* Ex. 1, subpoena and attached document request issued to MV Transportation, Inc., and Ex. 2, subpoenas issued to the other entities.

Transdev and Veolia merged in 2011; thus, Plaintiffs have only served Transdev. *See* Press Release, Completion of the Merger of Veolia Transport and Transdev (Mar. 3, 2011), *available at* http://www.transdevplc.co.uk/cmsUploads/news/files/Veolia%20Transdev%20merger.pdf. Plaintiffs are still attempting to serve BPT Manufacturing Corp.

Plaintiffs also subpoenaed B&C Transit, Inc., but recently learned that the subpoena should instead have been issued to BNC Inc. Plaintiffs have withdrawn the subpoena to B&C Transit and intend to issue a subpoena to BNC Inc. *See* Ex. 3, Letter from Dennis A. Corkery, Washington Lawyers' Comm. for Civil Rights and Urban Affairs to Richard Shovel, B&C Transit, Inc. (June 12, 2015).

be in the contractors' rather than WMATA's possession. *See* Scheduling Order ¶ 2; Tr. of Status Conference 15:14-16, Jan. 23, 2015 ("[T]his is the sort of discovery I think is going to be necessary, to ask the contractors what are the races of those people . . . .").

None of the subpoenaed contractors has objected to the subpoenas, and the deadline for objection has passed.[3] The subpoena responses are due June 19, 2015 (apart from Transdev's, which is due July 2, 2015), and one contractor has already complied by confirming that it does not have responsive documents.[4] Notwithstanding the fact that there is no discovery dispute between Plaintiffs and the subpoenaed contractors, WMATA seeks to insert itself, and the Court, into the matter and quash the subpoenas. However, as explained below, WMATA has no standing to bring such a motion. Additionally, it has not met its burden to establish that it is entitled to a protective order.

**I.     WMATA Lacks Standing to Quash Subpoenas Issued to Non-Parties**

"A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter." *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C. 2005). WMATA does not have—or claim to have—any such interest here. Instead, it alleges an interest in "the defense of WMATA's criminal background screening policy as applied by the WMATA contractors."

---

[3] Objections were due on or before June 16, 2015 for all entities that have been served except for Dynamic Concepts, whose objections are due June 18, 2015. *See* Fed. R. Civ. P. 45(d)(2)(B) ("[O]bjection[s] must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.").

[4] *See* Ex. 4, Email from Earl J. Acquaviva, Jr., Senior Vice President and General Counsel, Bally Total Fitness Corp. to Dennis Corkery, Washington Lawyers' Comm. for Civil Rights and Urban Affairs (June 8, 2015) (explaining that former Bally subsidiary Gymco has not had any contracts with WMATA from 2009 to the present).

Def.'s Mem. of P. & A. 19.[5] WMATA's general interest in defending itself in this litigation, however, is not the type of interest or privilege that confers standing; indeed, it is nothing more than an interest in avoiding the disclosure of documents that would be detrimental to WMATA's case. *See In re Wheat Farmers Antitrust Class Action Litig.*, No. 81-0249, 1983 WL 1791, at *2 (D.D.C. Mar. 4, 1983) ("[E]xceptions to that general rule [that only one who is subpoenaed has standing to quash] are customarily made for third parties having interests in the evidence sought (*other than a desire to prevent its disclosure*) which are independently entitled to the law's protection.") (emphasis added). Such an interest does not justify a motion to quash Plaintiffs' subpoenas for the specific documents that Plaintiffs have requested, and could easily be asserted by any defendant in any case.[6]

WMATA relies on *Albany Molecular Research, Inc. v. Schloemer*, 274 F.R.D. 22, 25 (D.D.C. 2011), which recognizes a party's proprietary interest in its confidential business records, to establish its standing to object to Plaintiffs' subpoenas. *Albany*, however, is inapposite. In *Albany*, the court found that the defendant pharmaceutical company had standing to quash a subpoena issued to the Food and Drug Administration because the company had a "real and defined interest in the [subpoenaed] business records," which contained details about the defendant's drug manufacturing process and other sensitive business information. *Id.* at 24-26. Here, by contrast, WMATA has not asserted that the subpoenaed documents are confidential business records or are otherwise protected by a cognizable interest or privilege. WMATA does not suggest, for example, that the documents contain its confidential information or are protected

---

[5] *See also* Def.'s Mem. of P. & A. 20 ("WMATA in a sense must stand in the shoes of its contractors for the purpose of defending the background screening policy . . . .").

[6] Other recognized interests or privileges include a party's privacy interest in its mental health, financial or personnel records, *United States v. Binh Tang Vo*, No. CR 13-168 (EGS), 2015 WL 222318, at *2 (D.D.C. Jan. 15, 2015), and claims of attorney-client or work-product privilege, *Novak v. Capital Mgmt. & Dev. Corp.*, 241 F.R.D. 389, 394 (D.D.C. 2007).

5

by attorney-client privilege.  Nor has WMATA indicated that its business relationships with the subpoenaed contractors are at risk.  *See Kress v. Price Waterhouse Coopers*, No. CIV S-08-0965 LKK GGH, 2012 WL 1991951, at *4 (E.D. Cal. June 4, 2012).

WMATA also lacks standing to complain that Plaintiffs' subpoenas are overly broad and unduly burdensome.  *See* Def.'s Mem. of P. & A. 1.  "A party's objection that a subpoena to a non-party seeks irrelevant information or would impose an undue burden are not grounds on which a party has standing to move to quash a subpoena when the non-party has not objected." *Wells Fargo & Co. v. ABD Ins.*, No. C 12-03856 PJH (DMR), 2012 WL 6115612, at *2 (N.D. Cal. Dec. 10, 2012); *see also W. Coast Prods., Inc. v. Does 1-5829*, 275 F.R.D. 9, 16 (D.D.C. 2011) (explaining that defendants' objections that subpoenas issued to non-party internet service providers (ISPs) failed to allow a reasonable time to comply and imposed an undue burden "may only be raised by the ISPs themselves in an appropriate motion to quash or for protective order").

WMATA suggests that its right to seek sanctions for improperly certified discovery requests under Federal Rule 26(g) somehow confers standing to quash Plaintiffs' non-party subpoenas.  *See* Def.'s Mem. of P. & A. 21.  This novel proposition, for which WMATA cites no legal authority, must be rejected as it would create an end-run around the standing requirement entirely, and could be utilized by any party in any case to quash a non-party subpoena.

In sum, WMATA has not proffered a single cognizable interest that establishes that it has standing to challenge Plaintiffs' non-party subpoenas.  Thus, the specific objections raised by WMATA may only be raised by the subpoenaed contractors themselves (and the time for them to raise such objections has lapsed).  Accordingly, WMATA's motion to quash should be denied.

## II. WMATA Has Not Met Its Heavy Burden of Establishing the Need for a Protective Order under Federal Rule 26

Under Federal Rule 26, a protective order may be issued to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). A motion for a protective order "should generally be made by the person from whom the documents or things are requested." *Washington*, 230 F.R.D. at 21. Although "a party may seek a protective order . . . regarding a subpoena issued to a non-party if it believes its own interest is jeopardized by the discovery sought from the non-party," *Wells Fargo & Co.*, 2012 WL 6115612, at *2, that party bears a "heavy burden of showing extraordinary circumstances based on specific facts that would justify such an order." *Washington*, 230 F.R.D. at 21 (internal quotation marks and citation omitted). It must make a "specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998).

WMATA has not met this burden. As discussed above, WMATA has not articulated any interest of its own that would be jeopardized by the discovery Plaintiffs seek from the non-parties (apart from its interest in avoiding the disclosure of documents that might be damaging to its case). Nor has WMATA set forth any "specific facts" demonstrating that the subpoenaed contractors will suffer "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Instead, WMATA relies on conclusory statements that the subpoenas are not reasonably calculated to seek admissible evidence, and arguments that are either moot, invalid, or otherwise insufficient to establish the "extraordinary circumstances" that would warrant a protective order. Furthermore, to the extent that the subpoenaed contractors have objections to the subpoenas, those concerns are more appropriately resolved through conferences

between the contractors and Plaintiffs, and not through a protective order prematurely requested by WMATA.

### A. WMATA's Objections to the Subpoenas are Moot, Invalid, and Otherwise Insufficient to Warrant a Protective Order

WMATA's Memorandum of Points and Authorities sets forth nine arguments for why WMATA believes it is entitled to a protective order. These arguments essentially boil down to: (1) the subpoenaed contractors were not identified in Plaintiffs' original class definition, and (2) Plaintiffs should not be allowed to discover documents predating WMATA's 2011 Policy. As explained below, the first argument is now moot and the second argument is based on a narrow reading of the Complaint and a strained understanding of the Court's Scheduling Order. Thus, WMATA has not met its burden of establishing the need for a protective order.

#### 1. WMATA's Arguments Based on Plaintiffs' Original Class Definitions are Moot

In points one through four, WMATA argues that Plaintiffs' subpoenas are improper because they were issued to contractors that were not identified in the class or subclasses set forth in Plaintiffs' original complaint. Def.'s Mem. of P. & A. 11-13. However, on June 9, 2015, Plaintiffs filed an Amended Complaint with leave of the Court that defined the following class:

> African-American persons who, since February 23, 2012, have been terminated or otherwise permanently separated from their positions, suspended with or without pay, deterred from applying for internal job openings, deterred from taking medical or personal leave, and/or denied employment with WMATA <u>or any third party contractor or subcontractor</u> as a result of WMATA's Criminal Background Check Policy . . . .

First Am. Class Action Compl. ¶ 37, June 9, 2015, ECF No. 84 (emphasis added). Because Plaintiffs issued subpoenas to entities believed to be third party contractors who are required by WMATA to utilize its Criminal Background Check Policy, the entities, and their employees and

applicants, are relevant to Plaintiffs' class claims, and WMATA's objections on this ground are moot.

In point three, WMATA contends that none of the subpoenaed contractors, nor their employees or applicants, were identified in Plaintiffs' Initial Disclosures as persons likely to have knowledge of discoverable information to support Plaintiffs' claims. Def.'s Mem. of P. & A. 12. However, Plaintiffs' Initial Disclosures provide that "Contractors . . . may have discoverable information concerning all issues pending in the litigation," and define the term "Contractor" as "any person or entity that contracted to perform work for or on behalf of WMATA. This includes, but is not limited to . . . Veolia Transportation [now Transdev], MV Transportation . . . BPT Manufacturing . . . and Service Max." Ex. 5, Pls.' Initial Disclosures 3, 16. Plaintiffs' Supplement to their Initial Disclosures further identifies employees or applicants of G.W. Peoples and Gymco as likely to have knowledge of discoverable information to support Plaintiffs' claims. Ex. 6, Supplement to Plaintiffs' Initial Disclosures 1-2. Thus, Plaintiffs' Initial and Supplemental Disclosures, which do not define the scope of Plaintiffs' permissible discovery, specifically identified seven of the eight subpoenaed contractors at issue here.[7]

The arguments raised in points one through four of WMATA's motion, that the subpoenaed contractors are not relevant to Plaintiffs' classes, are moot in light of Plaintiffs' Amended Complaint. However, even under Plaintiffs' original complaint, Plaintiffs properly sought discovery from the subpoenaed contractors. As noted by the Court, it is WMATA's 2011 Criminal Background Check Policy and its application that are at issue in this case. *See* Tr. of Status Conference 8:12-17, Jan. 23, 2015. To the extent that employees or applicants of the subpoenaed contractors have been adversely affected by WMATA's 2011 Policy, as is indicated

---

[7] Plaintiffs' Supplement to their Initial Disclosures also identifies BNC Inc., which will be subpoenaed in place of B&C Transit. Ex. 6, Supplement to Plaintiffs' Initial Disclosures 3.

by Plaintiffs' preliminary investigation, Plaintiffs are entitled to discovery into the contractors' application of the Policy, and the contractors' employees and applicants are therefore properly included in Plaintiffs' disparate impact analysis. Additionally, Plaintiffs should be allowed discovery into whether and how the contractors applied the Policy to "prescreen" applicants ultimately referred to WMATA.

For all of these reasons, WMATA's arguments in points one through four do not support the need for a protective order.

### 2. Documents Predating WMATA's 2011 Criminal Background Check Policy are Relevant to Class Certification and Disparate Impact Analysis

In points six through eight, WMATA broadly objects to the subpoenas' requests for documents that predate WMATA's 2011 Policy, arguing that prior policies and documents are irrelevant and outside the scope of the Scheduling Order and the Complaint. *See* Def.'s Mem. of P. & A. 13-15. WMATA is mistaken. While Plaintiffs' disparate impact claims are based on the application of the 2011 Policy, information predating WMATA's implementation of that Policy is relevant and necessary to Plaintiffs' class certification and disparate impact claims, and discovery of such information is specifically contemplated by the Court's Scheduling Order.

The Court's Scheduling Order explicitly allows discovery regarding the "development, implementation, and use" of the 2011 Policy. Scheduling Order ¶ 2(C). Documents pertaining to the "development" of the 2011 Policy will necessarily have been created "before the 2011 Policy became effective." Def.'s Mem. of P. & A. 15. Documents predating the 2011 Policy are also necessary to understand how the 2011 Policy has been implemented and used. For example, comparing the language of the 2011 Policy to earlier drafts as well as to the language and procedures used to implement WMATA's 2009 Policy will facilitate interpretation of the terms of the 2011 Policy and how it was applied, including, *e.g.*, the extent to which it was non-

discretionary and uniformly applied to putative class members. To the extent that the contractors possess this relevant information, obtaining discovery from them is appropriate, as the Scheduling Order specifically allows for discovery into the "[a]pplication of the Policy to WMATA's contractors." Scheduling Order ¶ 2(D). Accordingly, WMATA has not established that a protective order prohibiting the discovery of "[d]ocuments before the 2011 Policy became effective" is proper, much less necessary.

      WMATA's remaining objections similarly fail to justify a protective order. In point five, WMATA erroneously argues that because Plaintiffs' disparate impact claims are based on race, other demographic data is irrelevant. Def.'s Mem. of P. & A. 13. To the contrary, demographic data such as age and gender are critical for creating a robust statistical model that controls for non-race factors that may influence observed employment outcomes. *See McReynolds v. Sodexho Marriott Servs., Inc.*, 349 F. Supp. 2d 1, 21 (D.D.C. 2004) (explaining that including major variables in a multiple regression analysis is important because "failure to do so may mask the true cause of a statistical disparity between races"); *see also Segar v. Smith*, 738 F.2d 1249, 1261 (D.C. Cir. 1984) (noting that age is a variable that is typically important to Title VII regression analyses). WMATA's other objections, such as to the date restrictions of particular requests or the scope or meaning of certain requests, are more appropriately raised by the subpoenaed contractors and resolved through the meet-and-confer process, as discussed below.[8]

---

[8] For example, WMATA's apparent confusion as to certain definitions in the subpoenas does not warrant a protective order, particularly since Plaintiffs have clearly requested information pertaining to WMATA's past *and present* criminal convictions policies, including the 2009 and 2011 Policies. *See* Ex. 1, Attach. A at 5, 10 (Document Request 1 and Definition 29). Similarly, while Plaintiffs believe that information about arrest policies is relevant to determining whether adverse employment actions may be properly attributed to the 2011 Policy, and that producing such information would not impose any significant incremental burden (WMATA's point six), to the extent that a subpoenaed contractor disagrees, such disagreement may be appropriately resolved through informal discussions with Plaintiffs.

As to WMATA's point nine, regarding the parties' June 2, 2015 meet-and-confer, Plaintiffs are amenable to discussing the subpoenas with the subpoenaed contractors, who have the standing to raise the types of objections now asserted by WMATA.

### B. Disputes Regarding the Subpoenas Should be Resolved in the First Instance Through Conferences between Plaintiffs and the Subpoenaed Contractors

The Court's Scheduling Order requires counsel to "confer in good faith in an effort to resolve any discovery dispute before bringing it to the Court's attention." Scheduling Order ¶ 10. Accordingly, any objections or concerns that the subpoenaed contractors may raise, including challenges to the breadth or burden of the subpoenas, can and should be resolved in the first instance through conferences with Plaintiffs. Indeed, Plaintiffs have already had informal discussions with one of the subpoenaed contractors, and were able to quickly and efficiently confirm that the contractor does not possess responsive documents. To date, none of the subpoenaed contractors has raised objections to the documents that have been requested and, apart from Dynamic Concepts, the deadline for the served contractors to object has passed. Because the burden of complying with the subpoenas will vary from one contractor to another, and for some, may be as little as producing a single box of records, any objections that may arise should be resolved through individual discussions with Plaintiffs and without unnecessarily burdening the Court, consistent with the requirements of the Scheduling Order. WMATA simply has not made a showing that a protective order is necessary prior to the subpoenaed contractors voicing any objections or conferring with Plaintiffs.

### Conclusion

WMATA lacks standing to challenge the subpoenas issued by Plaintiffs to non-parties, and it has not met its heavy burden of establishing the need for a protective order. Plaintiffs

respectfully request that the Court deny WMATA's motion to quash and alternative motion for a protective order.

Dated: Washington, D.C.
June 17, 2015

Respectfully submitted,

By: /s/ John Freedman

**Arnold & Porter LLP**
John A. Freedman (DC Bar No. 453075)
Brandie N. Weddle (DC Bar No. 982859)
Tom McSorley (DC Bar No. 1001890)
555 Twelfth Street, NW
Washington, D.C. 20004
202-942-5316
John.Freedman@aporter.com

**NAACP Legal Defense &
Educational Fund, Inc.**

Rachel M. Kleinman (admitted *pro hac vice*)
Natasha M. Korgaonkar (admitted *pro hac vice*)
40 Rector Street, 5th Floor
New York, NY 10006

**Washington Lawyers' Committee for Civil Rights and Urban Affairs**
Matthew Handley (DC Bar No. 489946)
Dennis Corkery (DC Bar No. 1016991)
11 Dupont Circle, NW
Suite 400
Washington, D.C. 20036

*Attorneys for Plaintiffs and the Putative Class*

13

**CERTIFICATE OF SERVICE**

  I certify that on June 17, 2015, a true and correct copy of the foregoing was served through CM/ECF or by Federal Express on the following:

Harvey A. Levin
Kathleen Elizabeth Kraft
THOMPSON COBURN, LLP
1909 K Street, NW, Suite 600
Washington, DC 20006-1167
hlevin@thompsoncoburn.com
kkraft@thompsoncoburn.com
*Counsel for Washington Metropolitan Area Transit Authority*

Gerard Joseph Stief
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
600 Fifth Street, NW
Washington, DC 20001
GStief@WMATA.com
*Counsel for Washington Metropolitan Area Transit Authority*

Michael N. Petkovich
Amanda Leigh Scott Vaccaro
JACKSON LEWIS LLP
10701 Parkridge Boulevard, Suite 300
Reston, VA 20191
Petkovim@jacksonlewis.com
Amanda.Vaccaro@jacksonlewis.com
*Counsel for Diamond Transportation Services, Inc.*

Richard William Black
LITTLER MENDELSON, P.C.
1150 17th Street NW, Suite 900
Washington, DC 20036
rblack@littler.com
*Counsel for First Transit, Inc.*

Nat P. Calamis
Carr Maloney P.C.
2000 L Street, NW, Suite 450
Washington, DC 20036
npc@carrmaloney.com
*Counsel for Executive Personnel Services, Inc.*

Galen Pendergrass
4005 23rd Parkway, Apt. 21
Temple Hills, MD 20748

BPT Manufacturing Corporation
975 Russell Ave # B
Gaithersburg, MD 20879

Dynamic Concepts, Inc.
1730 17th Street, NE
Washington, DC 20002

G.W. Peoples Contracting Co., Inc.
7 St. Paul Street, Suite 820
Baltimore, MD 21202

Gymco Construction Company
c/o Bally Total Fitness Corporation
11400 Marvon Road
Baltimore, MD 21087

MV Transportation, Inc.
1015 15th Street, NW, Suite 1000
Washington, DC 20005

ServiceMax
1601 K Street, NW
Washington, DC 20006

| | |
|---|---|
| Veolia Transportation<br>8601 Georgia Ave # 703<br>Silver Spring, MD 20910 | Transdev Services, Inc.<br>1015 15th Street, NW, Suite 1000<br>Washington, DC 20005 |

/s/ Brandie Weddle
Brandie N. Weddle (DC Bar No. 982859)

*Counsel for Plaintiffs*

15