# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ERICK LITTLE, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil No. 14-1289 (RMC) |
| | ) (consolidated with 15-98, 15-114, |
| | ) 15-1298, and 17-168) |
| WASHINGTON METROPOLITAN AREA | ) |
| TRANSIT AUTHORITY, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter came before the Court following a fairness hearing for final approval of a proposed class settlement (Settlement) embodied in a Class Action Settlement Agreement (Settlement Agreement), dated as of November 22, 2017, between the Washington Metropolitan Area Transit Authority (WMATA) and Erick Little, Gerald Tucker, Fitzgerald Stoney, Marcello Virgil, Leroy Quarles, Timothy McClough, Leon McKenzie, and Louia McKenzie (collectively, Class Representatives) on behalf of themselves and the respective class(es) of which they are Class Representatives; Sidney Davis; and D.W., a minor child of Lawrence Whitted, who is deceased, and Joyce Short, D.W.'s next friend (collectively, Ms. Short). A copy of the Settlement Agreement was submitted to the Court as part of the motion to approve the Settlement. Capitalized terms used and not otherwise defined in this Memorandum Opinion and accompanying Order shall have the meanings assigned to them in the Settlement Agreement.

Having read, reviewed, and considered the papers filed with this Court in support of final approval of the Settlement, including any declarations submitted, oral arguments of counsel, the Settlement Agreement, and the pleadings filed in this action; having conducted a

1

fairness hearing with regard to the Settlement and approval thereof; being fully informed regarding the facts surrounding the proposed Settlement; and based upon this information and the record as a whole; the Court will grant final approval of the Settlement, attorneys' fees, and service awards.

## I. BACKGROUND

A complete explanation of the background and claims raised in this case can be found in this Court's opinion on class certification. *See* Opinion [Dkt. 186]. The Court includes a brief summary here.

Plaintiffs brought a class-action suit on behalf of themselves and other similarly situated individuals under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2.1401.01 *et seq* alleging that a criminal background check (Policy 7.2.3), *see* Notice of Second Am. Compl., Ex. C, Policy 7.2.3 [Dkt. 200-4], used by WMATA to screen candidates and employees, was facially neutral but had a disparate impact on African Americans. WMATA's Policy 7.2.3 governed how and when individuals with criminal convictions could obtain or continue employment with WMATA and its contractors and subcontractors. WMATA at all points has argued that it adopted Policy 7.2.3 as a business necessity and that it did not have a discriminatory impact on African Americans. Policy 7.2.3 included four appendices which specified the background check criteria for different types of positions. Plaintiffs moved for class certification and on March 31, 2017, the Court certified three classes under Fed. R. Civ. P. 23(b)(2): Appendix A Class, Appendix C Class, and Appendix F Class/MetroAccess Class. *See* Opinion at 46-47. The Court did not certify a damages class under Fed. R. Civ. P. 23(b)(3). *See id*. at 41, 44-45.

Following class certification the parties began merits discovery and also engaged in extensive settlement negotiations. The parties met in person on multiple occasions and participated in two formal mediation settlements with a neutral mediator. *See* Mem. in Supp. of Pls.' Mot. for Final Approval of Proposed Class Action Settlement (Final Class Settlement Mot.) [Dkt. 240] at 5-6. On November 22, 2017, the parties memorialized the terms of the Settlement Agreement. *See id*. at 6. The Settlement Agreement provides that WMATA shall pay $6.5 million into a Class Settlement Fund to be distributed to Class Counsel for payment of fees and costs, a Claims Administrator for its work in administering the Fund, eligible class members that submit short or long claims forms, and Class Representatives for their assistance in the litigation. *See id*. at 6-8. Additionally, WMATA agreed to maintain a new policy (2017 Policy), adopted in 2017, which provides for individualized assessments after an applicant fails the background check rather than presumptive disqualification, for at least one year after the date of the Court's final order approving the Settlement Agreement. *See id*. at 9.

On December 7, 2017, this Court granted preliminary approval of the proposed class-action Settlement between the Class Representatives and WMATA. *See* Preliminary Approval Order [Dkt. 230]. The Preliminary Approval Order ordered that notice of the proposed Settlement be sent by first-class mail to a Settlement Class consisting of individuals, determined by Class Counsel from records provided by third party First Choice Background Screening, Inc. (First Choice)[1] who: (i) failed a criminal background screening under the Background Screening Policy since February 23, 2012; (ii) were denied employment, terminated, or otherwise permanently separated from their position, suspended from employment with or without pay,

---

[1] First Choice is the WMATA contractor that conducted the background screenings under Policy 7.2.3.

and/or denied employment with WMATA or a contractor or subcontractor of WMATA as a result of the Background Screening Policy; and (iii) either were identified in the First Choice records as African American or had not been identified in the First Choice records as having a particular race. The notice was sent in this manner to ensure that all members of the Settlement Class were notified.

On April 6, 2018, Plaintiffs filed a Motion for Final Approval of the Proposed Class Action Settlement and a Motion for Approval of Service Payments. Final Class Settlement Mot. [Dkt. 240]; Mot. for Approval of Serv. Payments [Dkt. 241]. WMATA also filed a Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Lawsuit Settlement Agreement. WMATA Mem. in Supp. of Class Action Settlement [Dkt. 245]. The Court also received objections from six individuals and reviewed and considered each objection despite some untimely filing. *See* Objections [Dkts. 232, 233, 234, 236, 237, 239, 244, 246, and 252].

On April 18, 2018, the Court held a formal fairness hearing to consider whether to grant final approval of the Settlement. *See* 4/18/2018 Minute Entry. The Court heard and considered argument from the parties and the following individuals who elected to appear to voice their support for, or objection to, the Settlement: Galen Pendergrass, Bernhard Levi, Thomas Hall, Tiffany Burke, Kaye Lawton, and Sterling Pickett.

## II. LEGAL STANDARD

### A. Final Approval of Class Settlement

Under Federal Rule of Civil Procedure 23(e), in order to grant final approval of a settlement, the Court must find that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998); *see also Greenberg v. Colvin*, No. 13-1837 (RMC), 2015 WL 4078042, at *3 (D.D.C. July 1, 2015); Fed. R. Civ. P. 23(e)(2).

"In this Circuit, there is no single test for evaluating a proposed settlement under Rule 23(e)." *Stephens v. US Airways Group, Inc.*, 102 F. Supp. 3d 222, 226 (D.D.C. 2015). "District courts consider the facts and circumstances of the case, and examine the following factors: (a) whether the settlement is the result of arms-length negotiations; (b) the terms of the settlement in relation to the strength of plaintiffs' case; (c) the stage of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel." *Id.* (quotations and citation omitted). In analyzing these factors, the Court's role is a limited one:

> It is well-established that courts assume a limited role when reviewing a proposed class action settlement. They should not substitute their judgment for that of counsel who negotiated the settlement. Rather, courts favor the resolution of disputes through voluntary compromise, and, therefore, strongly encourage settlements. In the context of class actions, settlement is particularly appropriate given the litigation expenses and judicial resources required in many such suits. Absent evidence of fraud or collusion, such settlements are not to be trifled with.

*Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 304 (D.D.C. 1996) (citations and quotations omitted).

**B. Reasonableness of Attorneys' Fees Award**

In the D.C. Circuit, the "percentage of the fund" method of calculating attorneys' fees is the "proper measure" of "contingent counsel fees in class actions resulting in the creation of a common fund payable to plaintiffs." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1263 (D.C. Cir. 1993). The common fund doctrine "allows a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees. It is by now well established that 'a litigant or lawyer who recovers a common fund for the benefit of persons other than

5

himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Id.* at 1265 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

The percentage of the fund approach "helps to align more closely the interests of the attorneys with the interests of the parties." *Democratic Cent. Comm. of the Dist. of Columbia v. Washington Metro. Area Transit Comm'n*, 3 F.3d 1568, 1573 (D.C. Cir. 1993). This method also "discourage[s] inflation of attorney hours and promot[es] 'efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system.'" *In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82, 88 (D.D.C. 2013) (quoting *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 205 (D.D.C. 2011)).

In addition, the percentage of the fund method "is less demanding of scarce judicial resources than the lodestar method." *Swedish Hosp. Corp.*, 1 F.3d at 1269. Unlike with the lodestar method, which requires the reviewing court to "review attorney billing information over the life of a complex litigation and make a determination about whether the time devoted to the litigation was necessary or reasonable," the percentage of the fund method allows for a much simpler, more efficient fee calculation. *Id.* at 1269-70. "Given the complexity of many class action lawsuits, . . . lodestar calculation is likely to cause significant delay between the creation of a common fund and remuneration of class counsel," whereas "application of a percentage-of-the-fund methodology is relatively straightforward and much less time consuming." *Id.* at 1270.

"Courts have a duty to ensure that claims for attorneys' fees are reasonable, in light of the results obtained." *In re Black Farmers*, 953 F. Supp. 2d at 87 (citing *Trombley*, 826 F. Supp. 2d at 204; *In re Dep't of Veterans Affairs (VA) Data Theft Litig.*, 653 F. Supp. 2d 58, 60 (D.D.C. 2009)). "Fee awards in common-fund cases may range from fifteen to forty-five percent." *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 6 (D.D.C. 2008). To determine the

6

reasonableness of the percentage of the common fund requested by class counsel, courts in this Circuit have considered several factors, including:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* at 6-7.

### C. Reasonableness of Service Awards

It is common for courts to approve incentive awards in class-action litigations, especially when there is a common fund created to benefit the entire class. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002). In fact "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-0790, 2003 WL 22037741, at *10 (D.D.C. June 16, 2003).

Courts in this Circuit have used several factors when deciding whether to grant service awards for named plaintiffs in class actions cases involving a common fund. Such factors include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class benefitted from those action[s], and the amount of time and effort the plaintiff expended in pursuing the litigation." *Lorazepam*, 2003 WL 22037741, at *10 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

## III. ANALYSIS

### A. Final Class Settlement Approval

#### 1. Adequacy of Notice

The Court finds that the approved notice and claim form were sent in accordance with the Court's Preliminary Approval Order to all persons who likely would be potential Settlement Class members as determined by Class Counsel. *See* Final Class Settlement Mot. at 12-13. Potential Settlement Class members was determined by Class Counsel from records provided to WMATA from First Choice identifying the individuals who failed a criminal background screening under the Background Screening Policy during the relevant time period. The approved notice and claim forms were mailed to each such individual using the address for that individual contained in the First Choice records. Notices were also sent after January 6, 2018 to other individuals who were not listed in the First Choice records but were considered by Class Counsel to be potential class members based on other discovery.

Notice given to the members of the Settlement Class was reasonably calculated to apprise potential Settlement Class members of (1) the pendency of this action, (2) all material elements of the Settlement, (3) their opportunity to exclude themselves from, object to, or comment on the Settlement, and (4) their opportunity to appear at the final fairness hearing. Class Counsel also established a website containing pertinent information regarding the Settlement.

The Claims Administrator mailed out over 4,100 notices. Nine hundred and thirty-one (931) individuals submitted timely claims, including 354 long forms and 738 short forms. *See* Final Class Settlement Mot. at 10 (describing the long and short forms); *see also* Suppl. Statement in Supp. of Mot. for Final Approval of Settlement [Dkt. 250] at 1. The Claims Administrator has tentatively approved 386 short forms for a flat short form award of $2,000 and

254 long forms for "awards ranging from $2,000 to $40,000 and an average long form award of $22,389.81." *Id.* The short form claims will be paid out first and, if the remaining long form awards exceed the remaining balance in the Settlement Fund, then the Claims Administrator will make a pro rata adjustment to the long form awards. *See id*. at 2.

Notice to the Settlement Class was completed in accordance with the terms of the Settlement Agreement and the Court's Preliminary Approval Order. The notice given to the members of the Settlement Class, which set forth the principal terms of the Settlement Agreement and other matters, was the best practicable notice under the circumstances. The notice process prescribed by the Settlement Agreement and the Court's Preliminary Approval Order, and as actually implemented by Class Counsel, was reasonable and provided due and adequate notice to all persons entitled to such notice about these proceedings, the terms of the Settlement, and the matters set forth therein.

The Court finds that the notice satisfied all the requirements of the Class Action Fairness Act, the Federal Rules of Civil Procedure, the Constitution of the United States, the rights of the members of the Settlement Class to due process, and all other applicable laws. A full opportunity to be heard has been afforded to all members of the Settlement Class and other persons wishing to be heard.

Notice of the Settlement and the previously filed Settlement Agreement was also sent on December 15, 2017 via certified mail to the Attorneys General of the United States, District of Columbia, Virginia, Maryland, and twenty-three (23) other states where one or more of the potential class members resided, as determined from records produced by First Choice, pursuant to the Class Action Fairness Act. *See* 28 U.S.C. § 1715 (2006). No such Attorney General has appeared or filed a pleading contesting the Settlement. Such notice contained all

information required by the Class Action Fairness Act. The Court finds that the parties have complied with the notice requirements of 28 U.S.C. § 1715.

### 2. *Adequacy of Settlement*

Before approving a class action settlement the Court must find that it "is fair, reasonable, and adequate," and is not the product of collusion between the parties. Fed. R. Civ. P. 23(e). To make that finding, the Court considers (1) whether the parties engaged in arms-length negotiations, (2) the terms of the settlement compared to the strength of Plaintiffs' case, (3) the stage of the litigation when the settlement is proposed, (4) the reaction of the class to the proposed settlement, and (5) the opinion of experienced counsel. *See Stephens*, 102 F. Supp. 3d at 226.

The parties provided a detailed description of the settlement negotiations, which took place over a two-year period and included multiple days of discussions with an experienced, neutral mediator. During the settlement negotiations, Class Counsel also provided WMATA with feedback on its 2017 Policy, which resulted in WMATA including an individualized assessment process for those individuals who are initially disqualified for employment due to a criminal background check. After a preliminary settlement agreement was reached, the parties continued to negotiate for weeks to determine the language of the Settlement Agreement. The Court finds the parties engaged in extensive, good-faith, arms-length negotiations to reach a Settlement Agreement.

Next, the Court weighs the benefits from the Settlement Agreement against the strength of the Plaintiffs' case. Through each stage of this litigation, both Class Counsel and counsel for WMATA argued passionately and effectively for their positions. It has been evident to the Court from the beginning that this is not an easy case and would be hard fought from both

sides. To achieve a final decision in their favor and be awarded damages, Plaintiffs would first have to prevail on the merits of their argument that WMATA's Policy 7.2.3 had a disparate impact on African Americans.[2] Once Plaintiffs prevailed on the merits, each individual class member would have had to demonstrate their monetary damages in a *Teamsters* hearing. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977). A positive outcome for Plaintiffs, if they continued with the litigation, was in no way certain and would have taken years.

The Settlement Agreement provides compensation now for eligible class members who submitted timely short or long claim forms and includes nonmonetary relief because WMATA will continue its 2017 Policy for at least a year after the Court approves the Settlement Agreement. Therefore, class members can reapply to WMATA and receive an individualized assessment of the results of their background check, rather than simply being disqualified for employment due to a past conviction. The Court notes that Class Representative Erick Little has already successfully reapplied, gone through the individualized assessment process, and been hired by WMATA as a bus driver. When weighing the terms of the Settlement against the strength of Plaintiffs' case, the Court finds this factor supports approval of the Settlement Agreement.

Additionally, the Settlement Agreement was reached after discovery, briefing, and a decision on class certification, after most of fact discovery was completed, but before additional funds were expended on expert discovery or summary judgment briefing. At this point in the litigation the parties have conducted over 50 depositions and exchanged almost 300,000 pages of discovery. While, as in all settlements, both sides would have liked to come

---

[2] The Court notes, without making any findings on the issue, that WMATA has consistently and adamantly proclaimed that Policy 7.2.3 was developed and utilized for legitimate business purposes and overcoming those arguments would have been a significant challenge for Plaintiffs.

11

away with more favorable terms, the Court finds that the parties each had significant knowledge of the strengths and weaknesses of their cases and came to a fair Settlement at a stage of the litigation which also allowed the parties and the Court to be spared expending extensive resources on additional discovery, summary judgment briefing, and trial.

The Court also considers the reaction of class members to the Settlement Agreement. Although the Court received and considered objections from six individuals, the overall response was positive. The objections primarily involved challenges to the total amount of monetary damages or the effectiveness of the 2017 Policy at WMATA. This litigation and Settlement Agreement do not cover the 2017 Policy and, therefore, the Court will disregard objections of that nature. The Court also finds that objections to the adequacy of the monetary award were made by few individuals and are not a sufficient reason to deny a benefit to the remaining hundreds of individuals that will receive monetary awards. The Court heard from a number of individuals at the Fairness Hearing on April 18, 2018 who supported the settlement and were thankful to have the case finally resolved. The Court notes that a few of those individuals expressed interest and hope about the possibility of reapplying to WMATA under the 2017 Policy. The overall positive reaction of the class is another factor that weighs in favor of approving the Settlement Agreement.

Finally, the Court considers the opinion of experienced counsel, which in this case includes Class Counsel and counsel for WMATA. Both sides submitted extensive memoranda urging the Court to approve the Settlement and explaining why they believe it is in both the best interests of the class members, because of the monetary and nonmonetary relief as well as the certainty of some relief, and of WMATA, for the finality of the litigation and the resolution of all other pending or potential claims regarding Policy 7.2.3 (except as related to the two individuals

who opted out of the class). The Court finds the opinions of the experienced counsel in this case also weigh in favor of approving the Settlement Agreement.

Having read, reviewed, and considered the papers filed with this Court in support of final approval of the Settlement, the objections filed with the Court, oral arguments of counsel, presentations by interested class members made at the Fairness Hearing, the Settlement Agreement, and the pleadings filed in this action, and being fully informed regarding the facts surrounding the proposed Settlement, and based upon this information, the Court has determined that there is a bona fide dispute between the parties concerning issues of liability, equitable relief, and damages, and that the proposed Settlement should be approved as lawful, fair, adequate, and reasonable. The Court will approve the Settlement.

**B. Attorneys' Fee Award**

Class Counsel request an award of 25% of the Class Settlement Fund, or $1.625 million, to cover attorneys' fees and costs. Of this amount, $950,000 will go toward covering the costs paid by Class Counsel to litigate the case, including fees paid to experts during class certification. The remaining $675,000 (11% of the Class Settlement Fund) will be awarded as attorneys' fees. A "percentage of the fund" methodology is preferred in this Circuit because it discourages attorneys from inflating hours and promotes efficiency in litigation. *See Swedish Hosp. Corp.*, 1 F.3d at 1263.

The Court also finds that an award of 25% of the Class Settlement Fund to cover both costs and fees, or 11% of the Class Settlement Fund to cover fees, is reasonable and commensurate with fee awards in other common-fund cases. *See, e.g.*, *Wells*, 557 F. Supp. 2d at 6 ("Fee awards in common-fund cases may range from fifteen to forty-five percent."); *see also* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811, 833-35 (2010) (finding that similar percentages of common funds were

awarded to class counsel in labor and employment cases nationwide—a mean of 28% and a median of 29%).

As discussed above, Class Counsel demonstrated exceptional skill in litigating an extremely difficult case and obtaining class certification for liability purposes. The case has already lasted approximately four years and, due to its complexity, was destined to continue for additional years before a final resolution would be reached. Class Counsel devoted significant time, more than they will ultimately be compensated for, and at all times faced a significant risk of nonpayment if the claims were not ultimately successful. Their effort resulted in a substantial Class Settlement Fund of $6.5 million, which is intended to benefit a substantial class of between 3,500 and 4,000 individuals. The response from class members to the Settlement Agreement was overwhelmingly positive and about 640 individuals will receive an award ranging from $2,000 to $40,000. For all of these reasons, the Court will award Class Counsel $1.625 million in attorneys' fees and costs.

**C. Service Payment Award**

Finally, Plaintiffs move to award $70,000 in service payments to the eight Class Representatives—Erick Little, Timothy McClough, Gerald Tucker, Leroy Quarles, Fitzgerald Stoney, Marcello Virgil, Leon McKenzie, and Louia McKenzie—and Sidney Davis and Joyce Short.[3] Each of the Class Representatives would receive $7,500 and Mr. Davis and D.W., through Ms. Short, would receive $5,000.

Courts routinely compensate named plaintiffs for the services provided and the risks incurred during class action litigation. To assess whether a service payment is reasonable,

---

[3] Ms. Short is next-friend to D.W., successor in claims to Lawrence Whitted, an original named Plaintiff in this litigation.

14

courts often consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *In re Lorazepam*, 2003 WL 22037741, at *10.

As discussed above, the Settlement Agreement provides a significant benefit to the class members through monetary and nonmonetary concessions. Each of the Class Representatives and Messrs. Davis and Whitted played a significant role in the litigation and represented the interests of the absent class members. They attended multiple in-person group meetings to discuss the litigation, participated in telephone conferences, met individually with Class Counsel, and provided documents in response to Defendants' document requests. All of the Class Representatives and Mr. Davis were deposed during class certification discovery and met with Class Counsel prior to their depositions to prepare. Additionally, the information they shared was often very personal, as it dealt with prior criminal convictions that caused them to be denied employment by WMATA or its contractors.

Therefore, the Court finds a service payment award of $70,000 is necessary and reasonable and will grant Plaintiffs' Motion for Approval of Service Payments.

### IV. CONCLUSION

For the foregoing reasons the Court will grant Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement, Dkt. 240, and grant Plaintiffs' Motion for Approval of Service Payments, Dkt. 241. A memorializing Order accompanies this Memorandum Opinion.

Date: April 27, 2018                                /s/
                                                           ROSEMARY M. COLLYER
                                                           United States District Judge